**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOLUNTEER ENERGY SERVICES, INC., | ) | Case No. 22-50804 |
| | ) | |
| Debtor.[1] | ) | Judge C. Kathryn Preston |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTOR TO (A) MAINTAIN AND OPERATE
ITS EXISTING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS, AND (C) MAINTAIN EXISTING BUSINESS
FORMS; AND (II) GRANTING RELATED RELIEF**

Volunteer Energy Services, Inc., as debtor and debtor in possession (the "Debtor") in the

above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this motion (the

"Motion") for entry of an interim order (the "Interim Order") and a final order (the "Final

Order") pursuant to sections 105, 345, and 363 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules of the United States

Bankruptcy Court for the Southern District of Ohio (the "Local Rules"), substantially in the

forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the Debtor

to (a) maintain and operate its existing cash management system, as described herein and as

illustrated on **Exhibit C** attached hereto; (b) pay certain prepetition obligations related thereto;

and (c) maintain its existing business forms; and (ii) granting related relief. In support of this

Motion, the Debtor relies upon the *Declaration of David Warner in Support of the Chapter 11*

---

[1]    The last four digits of the Debtor's federal tax identification are (2693), and the address of the Debtor's corporate
headquarters is 790 Windmiller Drive, Pickerington, Ohio 43147.

*Petition and First Day Pleadings* (the "First Day Declaration"),[2] filed concurrently herewith, and respectfully states as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Ohio (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference entered in this District.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code sections 105, 345, and 363, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## BACKGROUND

I.      **The Chapter 11 Case**

4.      On the date hereof (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.      No trustee, examiner, creditors' committee, or other official committee has been appointed in this Chapter 11 Case.

7.      A description of the Debtor's business operations, capital structure, and circumstances leading to the chapter 11 filing is set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference.

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

## II.     **The Cash Management System**

### A.     **Description of the Cash Management System**

8.      The Debtor uses a centralized cash management system to collect funds from and for, and to pay expenses incurred by, its operations (the "Cash Management System") in the ordinary course of its business. The Cash Management System is integral to the operation and administration of the Debtor's business. In this regard, the Cash Management System allows the Debtor to efficiently (a) collect outstanding receivables, (b) identify the Debtor's cash requirements, and (c) transfer cash as needed to respond to these requirements.

9.      Because of the nature of the Debtor's business, the volume of transactions processed through the Cash Management System on a daily basis, and the disruption to business that would result if the Debtor were forced to close its existing bank accounts, it is critical that the Court permit the Debtor to continue to utilize the Cash Management System. In short, the Cash Management System is essential to cash inflows and outflows and the efficient execution and achievement of the Debtor's strategic business objectives and, ultimately, to maximizing the value of the Debtor's estate.

10.      The Cash Management System includes three Debtor bank accounts (the "Bank Accounts"), one loan account (the "Loan Account") controlled by PNC Bank, National Association ("PNC"), and eight brokerage accounts (the "Brokerage Accounts" and, together with the Bank Accounts and Loan Account, the "Accounts"). A list of the Accounts is attached to this Motion as **Exhibit D**. The Bank Accounts and Loan Account are held at PNC. The principal components of the Cash Management System and the flow of funds through the Cash Management System are as follows:

     a.      **Collection Account**. The Debtor receives payments for goods and services in the ordinary course of business, and all collections flow into a

3

collection account (Account No. xxxxxx9114) (the "Collection Account"). Amounts related to return of third-party collateral postings, hedge settlements, and miscellaneous refunds are also deposited into the Collection Account. Each day, amounts held in the Collection Account are swept into the Loan Account, over which PNC has control.

b. **Loan Account**. The funds received in the Loan Account are used to pay down certain amounts owed to PNC under that certain Amended and Restated Revolving Credit and Security Agreement dated as of June 30, 2016 by and among PNC, as Lender, Administrative Agent, Collateral Agent, and Issuer, PNC Capital Markets LLC, as Lead Arranger, and the Debtor, as a Borrower (as amended, supplemented, or otherwise modified from time to time).

c. **Operating Account**. In order to facilitate the Debtor's business operations related to, among other things, payroll, wholesale energy and hedging costs, pipeline and transmission payments, capacity costs, and broker payments, the Debtor maintains an operating account (Account No. xxxxxx7644) (the "Operating Account"). Each day, PNC approves and releases draw request amounts from the Loan Account to the Operating Account. The Debtor also uses the Operating Account to fund the Checking Account (as defined below) and Secondary Checking Account (as defined below).

d. **Checking Account**. The Debtor maintains a checking account (Account No. xxxxxx9791) (the "Checking Account") for the purpose of making broker payments, payments to local energy suppliers and producers, surety bond premium payments, and certain other operating expense payments. The Checking Account is a zero-balance account, funded based on the aggregate payments to be made via physical checks.

11. In addition to the Debtor's Loan Account and Bank Accounts that comprise the Debtor's central Cash Management System, the Debtor also utilizes eight Brokerage Accounts to hedge against potential changes in wholesale natural gas and electricity costs to service its retail customers (*i.e.*, increases or decreases against wholesale energy costs going forward). The Brokerage Accounts are split into two categories.

12. The first category are the Debtor's International Swaps and Derivatives Association Financial Swap Agreements ("ISDAs") with Merrill Lynch Commodities, Inc., Nextera Energy Capital Holdings, Inc., and NTL FCStone Markets, LLC d/b/a StoneX Markets

LLC (collectively, the "ISDA Counterparties"). The ISDAs allow the Debtor to enter into

"financially settled" transactions (*i.e.*, transactions that result only in payment obligations

between the parties derived from the value of an underlying commodity) with the ISDA

counterparties in order to hedge price risks associated with the physical natural gas and power

products that Debtor sells to its retail customers. To close out any financial hedges the Debtor

currently has in place requires that the Debtor negotiate with the counterparty as to the purported

close-out value of the trades. To the extent the trade falls into a negative value, in accordance

with the terms of the ISDAs, the Debtor could be required to provide the counterparty with cash

collateral.

13.     The second category are the Debtor's traditional Brokerage Accounts

(collectively, the "Clearing Brokers" and, together with PNC and the ISDA Counterparties, the

"Banks") wherein the Debtor purchases NYMEX Natural Gas Futures Contracts through a

broker. The broker acts as a clearing broker, meaning that the broker purchases and sells the

natural gas futures directly from and to the exchanges. Per Commodity Futures Trading

Commission regulations, the Debtor is required to post cash collateral to meet initial and

maintenance margin requirements to hold the futures contracts in the accounts. Moreover, to the

extent that the Debtor's natural gas futures fall into a negative value, the Debtor is required to

provide additional cash collateral to the brokers. Such accounts are held at Interactive Brokers

LLC. Additionally, the Debtor has an online trading account on ICE US OTC Commodity Mkts

LLC and a money market account at BlackRock, Inc.[3]

---

[3] The account with BlackRock, Inc. is no longer in use.

### B.    Compliance with Bankruptcy Code Section 345 and the U.S. Trustee Guidelines

14.    Bankruptcy Code section 345(a) governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." Bankruptcy Code section 345(b) requires that a debtor's bank post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." To comply with Bankruptcy Code section 345, the United States Trustee Office for Region 9 (the "U.S. Trustee") has issued *Operating Instructions and Reporting Requirements* (the "U.S. Trustee Guidelines") that generally require chapter 11 debtors to, among other things, deposit all estate funds into accounts with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee.

15.    As PNC is an authorized designated depository in the Southern District of Ohio,[4] the Bank Accounts and Loan Account comply with Bankruptcy Code section 345. Although the Brokerage Account Banks—other than PNC—are not authorized depositories in the Southern District of Ohio, the Brokerage Accounts are not traditional bank accounts constituting the Debtor's centralized Cash Management System. Rather, the Brokerage Accounts are used solely for the Debtor to enter into transactions to hedge against price changes as the Debtor sells physical natural gas and energy products to its retail customers. To the extent that funds flow

---

[4]    Although PNC is not listed on the Region 9 Authorized Depository List posted on the U.S. Trustee's website, PNC's counsel has informed the Debtor that the U.S. Trustee has a Uniform Depository Agreement with PNC and that PNC is therefore an authorized depository.

through the Brokerage Accounts, such funds are necessary to collateralize the Debtor's trades or for the Debtor to recover trade proceeds.

16.     The Debtor's use of the Brokerage Accounts is necessary to the nature of the Debtor's business and without these accounts, the Debtor risks being unprotected from market price changes to natural gas and energy prices. To use a simple example, if the Debtor agrees to sell natural gas to a retail customer at a fixed price equal to $X/MMBtu, then the Debtor would enter into one or more financial transactions that ensure the price it would pay for the physical natural gas is hedged so that no matter what happens in the natural gas commodity markets, the price that Debtor pays to buy its natural gas supply for this customer is less that $X/MMBtu plus the Debtor's costs and profit margin. The closing out of trades through the Brokerage Accounts requires an orderly process to allow the Debtor to recover the greatest value for these hedge transactions as well as to maintain certain hedges while the Debtor unwinds its retail sales positions. If the Debtor immediately closes out all positions, the Debtor is at risk of closing out unmatured trades at a discount or losing the hedges for retail contracts that remain on the Debtor's books. Accordingly, the orderly winddown and close out of the Brokerage Accounts is necessary to ensure that the Debtor recovers the greatest value possible for its trades for the benefit of its stakeholders.

17.     The Brokerage Accounts are not traditional bank accounts that can simply be closed and reopened with a designated authorized depository. Moreover, there is no need for the ISDA Counterparties or Clearing Brokers to post a bond because the value in the Brokerage Accounts is comprised of the market values of the current transactions themselves. The Debtor believes that it can maintain the Brokerage Accounts without jeopardizing any parties in interest. Accordingly, the Debtor respectfully submits that cause exists to (a) continue to allow the Debtor

7

to utilize its existing Accounts, subject to any reasonable changes the Debtor may implement to

the Cash Management System, and (b) waive the deposit requirements of Bankruptcy Code

section 345(b) with respect to the Brokerage Accounts.

### C.   Bank Charges

18.      In the ordinary course, the Banks charge, and the Debtor pays, honors, or allows

the deduction from the appropriate Account, certain service charges, lockbox fees, and other

fees, costs, and expenses (collectively, the "Bank Charges"). The Debtor pays approximately

$12,000–$16,000 in Bank Charges each month, depending on transaction volume, which Bank

Charges are debited from the applicable Account. The Debtor estimates that approximately

$22,000 in Bank Charges remain outstanding as of the Petition Date (the "Prepetition Bank

Charges"). To maintain the integrity of its Cash Management System, subject to Bankruptcy

Code section 553, the Debtor requests authority to pay, or authorize the applicable Bank to debit

the applicable Account for, any Prepetition Bank Charges for the prepetition transactions that are

charged postpetition and to continue to pay such fees in the ordinary course on a postpetition

basis.

### D.   Business Forms

19.      As part of its Cash Management System, the Debtor uses various preprinted

business forms (the "Business Forms") in the ordinary course. To minimize expenses to its estate

and avoid confusion during the pendency of the Chapter 11 Case, the Debtor requests that the

Court authorize its continued use of all existing preprinted correspondence and Business Forms

(including, without limitation, letterhead, checks, purchase orders, invoices, envelopes, and other

Business Forms) as such forms were in existence immediately before the Petition Date, without

reference to the Debtor's status as a debtor in possession, rather than requiring the Debtor to

incur the expense and delay of ordering entirely new Business Forms. If the Debtor exhausts its existing stock of Business Forms, it will ensure that any new Business Forms clearly denote the Debtor's status as a debtor in possession.

**RELIEF REQUESTED**

20.     The Debtor seeks entry of the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (i) authorizing, but not directing, the Debtor to (a) maintain and operate its existing Cash Management System; (b) subject to Bankruptcy Code section 553, pay, or authorize the applicable Bank to debit the applicable Account for, the Prepetition Bank Charges; and (c) maintain its existing Business Forms; and (ii) granting related relief, as described further below.

21.     For the reasons set forth herein, the Debtor submits that the relief requested is in the best interests of the Debtor, its estate, creditors, and other parties in interest and therefore should be granted.

**BASIS FOR REQUESTED RELIEF**

**I.     The Debtor Should Be Granted Authority to Maintain and Use Its Existing Accounts and Cash Management System**

**A.     The Maintenance of the Existing Accounts and Cash Management System Is Consistent with Bankruptcy Code Section 363(c)**

22.     To supervise the administration of chapter 11 cases, the U.S. Trustee has established the U.S. Trustee Guidelines, which, among other things, require chapter 11 debtors to immediately: (i) close all existing bank accounts and open new debtor in possession bank accounts with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee; (ii) establish separate debtor in possession accounts for (a) revenues and receipts, (b) the payment of taxes, and (c) payroll if the debtor has more than ten employees; and

9

(iii) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case name and number on such checks.

23.    The Debtor seeks a waiver of the above-stated U.S. Trustee Guidelines and requests that it be permitted to maintain and use its existing Accounts and Cash Management System. The Debtor's business and financial affairs are complex and, as described above, require the collection, disbursement, and prompt movement of funds through the Debtor's Accounts. If enforced in the Chapter 11 Case, these provisions of the U.S. Trustee Guidelines would cause delays in payments to vendors, suppliers, administrative creditors, employees, and others, thereby severely disrupting the Debtor's business operations and impeding the Debtor's efforts to maximize value for the benefit of its bankruptcy estate.

24.    The Debtor's request for authorization to continue to use the Cash Management System and its Accounts is consistent with Bankruptcy Code section 363(c), which allows a debtor in possession to use estate property in the ordinary course of business. *See, e.g.*, *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) ("Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing."). Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter." *See In re Baldwin United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). Courts also acknowledge that maintaining an existing cash management system allows debtors "to administer more efficiently and effectively its financial operations and assets." *In re Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995).

25.    In addition, the Debtor submits that parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System and the Accounts. The Debtor understands that payment of any debt incurred prior to the Petition Date must first be authorized by the Court.[5] The Debtor maintains and will continue to maintain detailed records so it can readily discern whether any transaction or transfer is or will be on account of a prepetition debt. If the relief requested in this Motion is granted, the Debtor will issue a stop pay order on, or will otherwise direct the Banks not to honor or pay checks, drafts, or wire transfers relating to, any debts incurred prior to the Petition Date, other than as authorized by this Court.

26.    Accordingly, the Debtor requests authority to continue to use and maintain the Cash Management System and the Accounts, including those listed on **Exhibit D** in the ordinary course of its business and with the same account numbers, styles, and Business Forms as the Debtor used prior to the Petition Date. In that regard, the Banks should be authorized to: (i) continue to maintain, service, and administer the Accounts, as such Accounts were maintained prepetition, without interruption, and in the usual and ordinary course; and (ii) receive, process, honor, and pay, to the extent of available funds, any and all checks, wire transfers, electronic fund transfers, or other items presented, issued, or drawn on any of the Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided, however*, that the Banks shall not pay any checks, wire transfers, electronic fund transfers, or other items on which the Debtor has issued a stop payment order in accordance with the existing deposit agreements between the Debtor and any Bank (the "Deposit Agreements") or has otherwise directed any Bank not to pay in accordance with the documents governing such Accounts. In the event any

---

[5]    The Debtor is seeking authority to pay certain of its prepetition obligations in various motions filed contemporaneously herewith.

checks or fund transfer requests relating to obligations that the Debtor is authorized to pay were

or are dishonored as a consequence of the filing of the Chapter 11 Case, the Debtor requests that

it be authorized to issue replacement checks or fund transfer requests to pay such obligations

(provided the Debtor's Bank Accounts contain sufficient funds).

27.     The Banks should also be authorized to: (i) accept, honor, and rely upon all

representations from the Debtor, in accordance with the terms of the applicable Deposit

Agreements, as to which checks, drafts, or wire transfers should be honored or dishonored

consistent with orders entered by this Court, regardless of whether the checks, drafts, or wire

transfers are dated prior to, on, or subsequent to the Petition Date and whether or not the Banks

believe that payment is authorized by some other order of this Court in accordance with the

terms of the applicable Deposit Agreements and provided that the applicable Accounts contain

sufficient funds; and (ii) accept presentment of all checks, drafts, and wire transfers as an

instruction by the Debtor to honor same, unless the Debtor places a stop payment on, or

otherwise instructs the Banks to not pay or dishonor a particular check, draft, or wire transfer.

28.     The Debtor also seeks authority to close existing Accounts or open new accounts

whenever needed, provided that the Debtor gives the U.S. Trustee adequate notice of any newly-

opened Accounts. The Debtor requests that any Account opened by the Debtor on or after the

Petition Date be deemed to have been opened prior to the Petition Date and listed on **Exhibit D**

and that any and all Banks at which such Accounts are opened be subject to the rights and

obligations granted or imposed by this Court.

29.     Subject to the provisions of any orders issued on this Motion and any future

orders of the Court, the Debtor further requests that (i) the Deposit Agreements be deemed to

govern the postpetition cash management relationship between the Debtor and the Banks, and all

of the provisions of such agreements, including, without limitation, the termination and fee

provisions, remain in full force and effect, and that (ii) either the Debtor or the Banks be

permitted to, without further order of this Court, implement changes to the Cash Management

System in the ordinary course of business pursuant to terms of the Deposit Agreements,

including, without limitation, the opening and closing of Accounts. Notwithstanding the terms of

any existing agreements between the Debtor and the Banks, the Banks shall not terminate any

cash management services without thirty (30) days' prior written notice to the Debtor, the U.S.

Trustee, and any official committee appointed in the Chapter 11 Case.

### B.      Cause Exists to Waive Bankruptcy Code Section 345 to the Extent It Is Applicable to the Cash Management System

30.      Bankruptcy Code section 345(b) requires the posting of a bond or other security

by any entity with which money of the estate is deposited or invested unless such deposits or

investments are federally insured or guaranteed, and unless "the court for cause orders

otherwise." In determining whether cause exists to waive the requirements of this statute, courts

consider factors including the sophistication of the debtor's business and cash management

system, the stability of the financial institutions, and the harm that would be imposed on an estate

if a waiver were not granted. *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn.

1999).

31.      Although the Brokerage Account Banks—other than PNC—are not authorized

depositories in the Southern District of Ohio, the Brokerage Accounts are not traditional bank

accounts constituting the Debtor's centralized cash management system. Rather, the Brokerage

Accounts are used solely for the Debtor to hedge against market price chances in the products the

Debtor sells to its retail natural gas and energy customers. To the extent that funds flow through

the Brokerage Accounts, such funds are necessary to collateralize the Debtor's trades or for the

13

Debtor to recover trade proceeds. The Debtor's use of the Brokerage Accounts is necessary to

the nature of the Debtor's business and without these accounts, the Debtor risks being

unprotected from market price changes to natural gas or energy products that the Debtor sells to

its retail customers.

32.     Moreover, the closing out of trades through the Brokerage Accounts requires an

orderly process to allow the Debtor to recover the greatest value for its trades. If the Debtor

immediately closes out all positions, the Debtor is at risk of closing out unmatured trades at a

discount or of terminating hedge transactions associated with sales obligations that continue to

exist under its retail contracts. Accordingly, the orderly winddown and close out of the

Brokerage Accounts is necessary to ensure that the Debtor recovers the greatest value possible

for its trades for the benefit of its stakeholders.

33.     Accordingly, cause exists to waive the requirement of Bankruptcy Code section

345(b) because (i) the Brokerage Accounts are maintained with reputable banking institutions;

and (ii) the complexity and cost associate with satisfying the requirements of section 345(b)

make satisfying such requirement impracticable.

**III.    The Debtor Should Be Granted Authority to Pay Prepetition Amounts Owed on
Account of the Cash Management System**

34.     In connection with continuing the use of the Accounts and the Cash Management

System, the Debtor further requests the authority to pay the Prepetition Bank Charges, as any

nonpayment of the Prepetition Bank Charges could cause serious disruptions to the Debtor's

estate. Specifically, the Debtor seeks authority to pay, or authorize the applicable Bank to debit

the applicable Account for, the Prepetition Bank Charges, subject to Bankruptcy Code section

553. The Banks may have setoff rights with respect to any of the Debtor's cash they hold and

could request that this Court lift the automatic stay to exercise those setoff rights. Thus, payment

14

of the Prepetition Bank Charges will save the Debtor the time and expense of responding to a lift

stay request and/or negotiating a stipulated order to allow the Banks to exercise setoff rights.

35.     The Banks should also be authorized to deduct from the appropriate Accounts the

Bank Charges owed to them, subject to Bankruptcy Code section 553, as set forth in any Deposit

Agreements, and further, to charge back to the appropriate Accounts of the Debtor any Bank

Charges resulting from returned checks or other returned items, including, without limitation,

returned items that result from automated clearing house transactions, wire transfers, or other

electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such

items were deposited or transferred prepetition or postpetition and regardless of whether the

Returned Items relate to prepetition or postpetition items or transfers.

36.     Courts have recognized that it is appropriate to authorize the payment of

prepetition obligations where necessary to protect and preserve the estate, including an operating

business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D.

Tex. 2002) (explaining that there are occasions in which the duty to protect and preserve the

estate, including an operating business's going-concern value, "can only be fulfilled by the

preplan satisfaction of a prepetition claim"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021,

1023 (Bankr. S.D. Ohio 1991) ("In applying the view of the law which we adopt, we consider

that to justify payment of a pre-petition unsecured creditor, a debtor must show that the payment

is necessary to avert a serious threat to the Chapter 11 process."); *In re Just for Feet, Inc.*, 242

B.R. 821, 825–26 (D. Del. 1999) ("The necessity of payment doctrine recognizes that paying

certain pre-petition claims may be necessary to realize the goal of chapter 11—a successful

reorganization."). In so doing, these courts acknowledge that several legal theories rooted in

Bankruptcy Code sections 105(a) and 363(b) support the payment of prepetition claims.

15

37.     Bankruptcy Code section 363(b) permits a bankruptcy court, after notice and a

hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b)(1). A court may authorize non-ordinary course

transactions, including the payment of certain prepetition claims, using property of the estate

pursuant to section 363(b) "when a sound business purpose dictates such action." *Stephens*

*Indus. Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986) (approving a sale of assets pursuant to

section 363(b)); *see also In re Murray Metallurgical Coal Holdings, LLC*, 613 B.R. 442, 455

(Bankr. S.D. Ohio 2020) (holding that "[section] 363 of the Bankruptcy Code allows bankruptcy

courts to authorize debtors to exercise their business judgment to pay [prepetition] critical vendor

claims"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989) (finding

that a sound business justification existed to justify payment of certain prepetition wages).

38.     Courts also authorize payment of prepetition claims in appropriate circumstances

based on Bankruptcy Code section 105(a), which codifies a bankruptcy court's inherent

equitable powers to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may

authorize pre-plan payments of prepetition obligations when essential to the continued operation

of a debtor's business. *See, e.g.*, *Eagle-Picher Indus.*, 124 B.R. at 1023 (authorizing payment of

prepetition indebtedness where the "payment is necessary to avert a serious threat to the Chapter

11"). Specifically, a court may use its power under Bankruptcy Code section 105(a) to authorize

payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to

as the "doctrine of necessity"). *See, e.g.*, *In re Lehigh & New England Railway Co.*, 657 F.2d

570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when

there "is the possibility that the creditor will employ an immediate economic sanction, failing

such payment"); *Just for Feet*, 242 B.R. at 826 (noting that under the necessity of payment

doctrine, a debtor must show that payment of a prepetition claim is "critical to the debtor's

reorganization") (internal quotations omitted); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396

(Bankr. N.D. Ohio 1991) ("A general practice has developed however, where bankruptcy courts

permit the payment of certain pre-petition claims pursuant to 11 U.S.C. § 105, where the debtor

will be unable to reorganize without payment."); *Ionosphere Clubs*, 98 B.R. at 176 (explaining

that the doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor

. . . to pay pre-petition claims where such payment is essential to the continued operation of the

debtor"). A bankruptcy court's use of its equitable powers to "authorize the payment of

prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a

novel concept." *Ionosphere Clubs*, 98 B.R. at 175 (citing *Miltenberger v. Logansport, C. & S.W.

Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances

when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition

claim." *CoServ*, 273 B.R. at 497.

39.     The Debtor's payment of Prepetition Bank Charges will facilitate its transition

into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses and

minimizing delays in the payment of postpetition amounts due. Accordingly, the Debtor

respectfully submits that a sound business purpose exists to authorize payment of the Prepetition

Bank Charges.

40.     Courts in this district have regularly allowed the payment of prepetition bank

charges in the ordinary course of a debtor's prepetition business. *See, e.g.*, *In re Murray

Metallurgical Coal Holdings LLC,* No. 20-10390 (JEH), Docket No. 231 (Bankr. S.D. Ohio

March 11, 2020) (authorizing the debtors to pay prepetition amounts on account of bank

charges); *In re Murray Energy Holdings Co.*, No. 19-56885 (JEH), Docket No. 389 (Bankr. S.D.

Ohio Dec. 10, 2019) (same); *In re AcuSport Corp.*, No. 18-52736 (JEH), Docket No. 123 (Bankr.

S.D. Ohio May 23, 2018) (same).

### III.   The Debtor Should Be Granted Authority to Continue Using Existing Business Forms

41.     To minimize expenses to its estate, the Debtor also requests authorization to

continue using its Business Forms existing immediately prior to the Petition Date without

reference to the Debtor's status as debtor in possession.

42.     The Debtor seeks authority to continue using its existing Business Forms without

imprinting "DIP" or "debtor in possession" thereon until such forms run out. Parties doing

business with the Debtor undoubtedly will be aware of the Debtor's status as debtor in

possession due to the Debtor providing notice of the commencement of the Chapter 11 Case and

information circulating within the Debtor's industry. Once the Debtor exhausts its existing stock

of Business Forms, it will ensure that any new Business Forms clearly denote the Debtor's status

as a debtor in possession.

43.     Courts in this district have allowed debtors to use their prepetition business forms

without the "debtor in possession" label in other chapter 11 cases. *See, e.g.*, *In re Hopedale*

*Mining LLC*, No. 20-12043 (GRH), Docket No. 215 (Bankr. S.D. Ohio Aug. 11, 2020)

(authorizing the debtors to use their existing business forms, without reference to their status as

debtors in possession); *In re Murray Metallurgical Coal Holdings LLC,* No. 20-10390 (JEH),

Docket No. 231 (Bankr. S.D. Ohio March 11, 2020) (same); *In re Murray Energy Holdings Co.*,

No. 19-56885 (JEH), Docket No. 389 (Bankr. S.D. Ohio Dec. 10, 2019) (same); *In re AcuSport*

*Corp.*, No. 18-52736 (JEH), Docket No. 123 (Bankr. S.D. Ohio May 23, 2018) (same); *In re*

*Ventilex USA Inc.* No. 10-16642 (JPH), Docket No. 35 (Bankr. S.D. Ohio Oct. 5, 2010) (same).

18

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

44.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the petition date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, granting the relief requested herein is integral to the Debtor's ability to transition into this Chapter 11 Case. Failure to receive such authorization and other relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to preserve and maximize the value of the estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

45.     To implement the foregoing successfully, the Debtor requests that the Court order that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that, for cause shown, such relief is excluded from the 14-day stay period under Bankruptcy Rule 6004(h).

## MOTION PRACTICE

46.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtor submits that this Motion satisfies Rule 9013-1(a) of the Local Rules.

## RESERVATION OF RIGHTS

47.     Nothing contained in this Motion nor any actions taken by the Debtor pursuant to the relief granted in the Final Order is intended or should be construed as: (a) an admission as to

the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's right to

dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular

claim; (d) an implication or admission that any particular claim is of a type specified or defined

in this Motion; (e) a request or authorization to assume any agreement, contract, or lease

pursuant to Bankruptcy Code section 365; (f) a waiver or limitation of the Debtor's rights under

the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any

liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are

valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or

seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission as to

the validity of any particular claim or a waiver of the Debtor's right to subsequently dispute such

claim.

## <u>NOTICE</u>

48.    The Debtor will provide notice of the Motion to: (a) the United States Trustee; (b)

counsel to PNC; (c) the holders of the 20 largest unsecured claims against the Debtor; (d) all

official committees appointed, as of the filing of this Motion, in the Chapter 11 Case and their

counsel; (e) the offices of the attorneys general for Ohio, Pennsylvania, Michigan, Kentucky, and

West Virginia; (f) the United States Attorney's Office for the Southern District of Ohio; (g) the

Internal Revenue Service; (h) the Debtor's state and local taxing authorities in Ohio,

Pennsylvania, Michigan, Kentucky, and West Virginia; (i) the Public Utilities Commission of

Ohio, Pennsylvania Public Utilities Commission, Kentucky Public Service Commission, and

Michigan Public Service Commission; (j) the U.S. Environmental Protection Agency; (k) the

Federal Energy Regulatory Commission; (l) the Banks; and (m) any party that has requested

notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the

relief requested, no other or further notice is required.

## **NO PRIOR REQUEST**

49.     No prior motion for the relief requested herein has been made in this or any other

court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim and

Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**,

respectively, granting the relief requested herein and such other and further relief as the Court

deems appropriate.

Dated: March 26, 2022                          Respectfully submitted,
        Columbus, Ohio

                                               */s/David M. Whittaker*
                                               David M. Whittaker (0019307)
                                               Philip K. Stovall (0090916)
                                               **ISAAC WILES & BURKHOLDER, LLC**
                                               Two Miranova Place, Suite 700
                                               Columbus, Ohio 43215-5098
                                               Tel:    (614) 221-2121
                                               Fax:    (614) 365-9516
                                               Email: dwhittaker@isaacwiles.com
                                                       pstovall@isaacwiles.com

                                               *- and -*

                                               Darren Azman (*pro hac vice* pending)
                                               Natalie Rowles (*pro hac vice* pending)
                                               **MCDERMOTT WILL & EMERY LLP**
                                               One Vanderbilt Avenue
                                               New York, New York 10017-3852
                                               Tel:    (212) 547-5400
                                               Fax:    (212) 547-5444
                                               Email: dazman@mwe.com
                                                       nrowles@mwe.com

                                               *Proposed Counsel to the Debtor*

**<u>Exhibit A</u>**

Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| | ) Chapter 11 |
| In re: | ) |
| | ) Case No. 22-50804 |
| VOLUNTEER ENERGY SERVICES, INC., | ) |
| | ) Judge C. Kathryn Preston |
| Debtor.[1] | ) |
| | ) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN**
**AND OPERATE ITS EXISTING CASH MANAGEMENT SYSTEM, (B) HONOR**
**CERTAIN PREPETITION OBLIGATIONS, AND (C) MAINTAIN EXISTING**
**BUSINESS FORMS; AND (II) GRANTING RELATED RELIEF**
**[RELATED TO DOCKET NO. [__]]**

Upon the motion (Doc. __) (the "Motion")[2] of the Debtor for entry of an interim order

(this "Order"): (i) authorizing, but not directing, the Debtor to (a) maintain and operate its

---

[1]   The last four digits of the Debtor's federal tax identification are (2693), and the address of the Debtor's corporate headquarters is 790 Windmiller Drive, Pickerington, Ohio 43147.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

existing Cash Management System; (b) subject to Bankruptcy Code section 553, pay, or

authorize the applicable Bank to debit the applicable Account for, the Prepetition Bank Charges;

and (c) maintain its existing Business Forms; and (ii) granting related relief, all as more fully set

forth in the Motion; and this Court having reviewed the Motion and having heard the statements

in support of the relief requested therein at a hearing before the Court; and upon consideration of

the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the Standing Order of Reference entered in this District; and the

matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this

proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and due and sufficient notice of the Motion having been given under the particular

circumstances; and it appearing that no other or further notice is necessary; and it appearing that

the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and

other parties in interest; and after due deliberation thereon; and good and sufficient cause

appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

**2022, at _:_ _.m. (Eastern Time)**. Any objections or responses to the entry of the proposed

Final Order shall be filed with the Court no later than **4:00 p.m. (Eastern Time) on _____,**

**2022**. If no objections to entry of the Final Order are filed and served, the Court may enter such

Final Order without further notice or hearing.

3.      Until such time as a final order is entered by this Court, the Debtor, is authorized,

but not directed, to continue using the existing Cash Management System, as more particularly

2

described in the Motion and herein, and the requirements of Bankruptcy Code section 345(b) are hereby waived on an interim basis with respect to such deposit practices.

4.      The Debtor is authorized and empowered, but not directed, to: (i) maintain and continue to use any and all of the Accounts in existence as of the Petition Date, including, without limitation, the Accounts identified on **Exhibit D** to the Motion, with the same account numbers, styles, and document forms as those employed prior to the Petition Date; (ii) subject to Bankruptcy Code section 553, pay, or authorize the applicable Bank to debit the applicable Account for, any Bank Charges owed to the Banks (including the Prepetition Bank Charges), in each case regardless of whether such items were deposited prepetition or postpetition, and otherwise perform its obligations under the documents governing the Accounts; (iii) deposit funds into and withdraw funds from the Accounts by all usual means, including, without limitation, checks, wire transfers, automated transfers, and other debits; (iv) open new accounts and close any existing Accounts as it may deem necessary and appropriate; *provided, however*, that the Debtor shall provide written notice to the U.S. Trustee of any newly opened accounts; and (v) treat the Accounts for all purposes as Accounts of the Debtor as debtor in possession.

5.      For all purposes in this Order, any account opened by the Debtor on or after the Petition Date and any and all Banks at which such Accounts are opened shall similarly be subject to the rights and obligations granted or imposed by this Order.

6.      Subject to further order of this Court, and except with respect to payment of any Bank Charges as authorized in this Order, nothing in this Order authorizes the Debtor to use any cash in the Accounts, and all parties' rights are reserved with respect thereto.

7.      Within five (5) business days after the date of entry of this Order, the Debtor shall (i) contact the Banks, (ii) provide the Banks with the Debtor's employer identification numbers,

and (iii) identify each of the Accounts held at the Banks as being held by a debtor in possession

in a bankruptcy case.

8.     The Debtor shall maintain accurate and detailed records of all transfers, so that all

transactions may be readily ascertained, traced, recorded properly, and distinguished between

prepetition and postpetition transactions.

9.     The Banks are authorized, but not directed, to (i) continue to maintain, service,

and administer the Accounts, as such Accounts were maintained prepetition, without

interruption, and in the usual and ordinary course; and (ii) receive, process, honor, and pay, to

the extent of available funds, any and all checks, wire transfers, electronic fund transfers, or

other items presented, issued, or drawn on any of the Accounts after the Petition Date by the

holders or makers thereof, as the case may be.

10.     The Banks shall not honor or pay any checks, wire transfers, electronic fund

transfers, or other items drawn on the Accounts or otherwise issued prior to the Petition Date for

which the Debtor specifically issues a stop payment order in accordance with the Deposit

Agreements (as defined below) or otherwise directs the Banks not to pay in accordance with the

documents governing such Accounts.

11.     Subject to the provisions of this Order, (i) those certain existing deposit

agreements between the Debtor and the Banks (the "Deposit Agreements") shall continue to

govern the postpetition cash management relationship between the Debtor and the Banks, and all

of the provisions of such agreements, including, without limitation, the termination and fee

provisions, shall remain in full force and effect, and (ii) either the Debtor or the Banks may,

without further Order of this Court, implement changes to the Cash Management System in the

ordinary course of business pursuant to terms of the Deposit Agreements, including, without

limitation, the opening and closing of Accounts.

12.     Subject to the provisions of this Order and the protections provided in paragraph

13 herein, the Banks are authorized, but not directed, to: (i) accept, honor, and rely upon all

representations from the Debtor, in accordance with the terms of the applicable Deposit

Agreements, as to which checks, drafts, or wire transfers should be honored or dishonored

consistent with orders entered by this Court, regardless of whether the checks, drafts, or wire

transfers are dated prior to, on, or subsequent to the Petition Date and whether or not the Banks

believe that payment is authorized by some other order of this Court in accordance with the

terms of the applicable Deposit Agreements and provided that the applicable Accounts contain

sufficient funds; and (ii) accept presentment of all checks, drafts, and wire transfers as an

instruction by the Debtor to honor same, unless the Debtor places a stop payment on, or

otherwise instructs the Banks not to pay or dishonor a particular check, draft, or wire transfer.

13.     Notwithstanding any other provision of this Order, the Banks shall not be liable to

any party or otherwise deemed in violation of this Order on account of: (i) following the

Debtor's representations, instructions, presentations, or directions as to any order of this Court

(without any duty of further inquiry); (ii) the honoring of any prepetition checks, drafts, wires,

ACH Transfers (as defined below), or other item in a good faith belief or representation by the

Debtor that the Court has authorized such prepetition check, draft, wire, ACH Transfer or other

item; or (iii) as the result of an innocent mistake made despite implementation of reasonable

handling procedures.

5

14.    The Banks shall not terminate any cash management services without thirty (30) days' prior written notice to the Debtor, the U.S. Trustee, and any official committee appointed in the Chapter 11 Case.

15.    The Banks are authorized, but not directed, subject to Bankruptcy Code 553, to deduct from the appropriate Accounts the Bank Charges owed to them as set forth in any Deposit Agreements, and further, to charge back to the appropriate Accounts of the Debtor any Bank Charges resulting from returned checks or other returned items, including, without limitation, returned items that result from automated clearing house transactions ("ACH Transfers"), wire transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the Returned Items relate to prepetition or postpetition items or transfers.

16.    The Debtor is authorized to continue using its existing Business Forms (including, without limitation, letterhead, checks, purchase orders, invoices, and envelopes) without alteration or change and without the designation "debtor in possession" or a debtor in possession case name and number imprinted upon them. Once the Debtor exhausts its existing stock of Business Forms, it shall ensure that any new Business Forms clearly denote the Debtor's status as a debtor in possession.

17.    To the extent the provisions and requirements set forth in the U.S. Trustee Guidelines are inconsistent with the authority granted to the Debtor in this Order, this Order Controls.

18.    No liens on any Accounts granted to any of the Debtor's creditors shall take priority over the prepetition and postpetition Bank Charges to which the Banks are entitled under the terms and in accordance with the Deposit Agreements.

6

19.     In the event any checks or fund transfer requests relating to obligations that the Debtor is authorized to pay were or are dishonored as a consequence of the filing of this Chapter 11 Case, the Debtor is authorized to issue replacement checks or effect postpetition fund transfer requests to pay such obligations, provided the Debtor's Bank Accounts contain sufficient funds.

20.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtor pursuant thereto) shall be construed as (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Bankruptcy Code section 365; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

21.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

22.     The Debtor provided good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are deemed satisfied by such notice.

23.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

24.    The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

25.    The Debtor shall serve this Order on the parties who were served with the Motion and shall file a certificate of service confirming compliance with this requirement within five business days after the entry of this Order.

26.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**SO ORDERED.**


Copies to: Default List

**<u>Exhibit B</u>**

Proposed Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 22-50804 |
| VOLUNTEER ENERGY SERVICES, INC., | ) | |
| | ) | Judge C. Kathryn Preston |
| Debtor.[1] | ) | |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN AND**
**OPERATE ITS EXISTING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN**
**PREPETITION OBLIGATIONS, AND (C) MAINTAIN EXISTING BUSINESS**
**FORMS; AND (II) GRANTING RELATED RELIEF**
**[RELATED TO DOCKET NO. [__]]**

Upon the motion (Doc. __) (the "Motion")[2] of the Debtor for entry of a final order (this

"Order"), (i) authorizing, but not directing, the Debtor to (a) maintain and operate its existing

---

[1]   The last four digits of the Debtor's federal tax identification are (2693), and the address of the Debtor's corporate headquarters is 790 Windmiller Drive, Pickerington, Ohio 43147.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

Cash Management System; (b) subject to Bankruptcy Code section 553, pay, or authorize the

applicable Bank to debit the applicable Account for, any Bank Charges owed to the Banks

(including the Prepetition Bank Charges); and (c) maintain its existing Business Forms; and (ii)

granting related relief, all as more fully set forth in the Motion; and this Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing

before the Court; and upon consideration of the First Day Declaration; and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of

Reference entered in this District; and the matter being a core proceeding within the meaning of

28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court being able to issue a final order

consistent with Article III of the United States Constitution; and due and sufficient notice of the

Motion having been given under the particular circumstances; and it appearing that no other or

further notice is necessary; and it appearing that the relief requested in the Motion is in the best

interests of the Debtor, its estate, creditors, and other parties in interest; and after due

deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.        The Motion is granted on a final basis as set forth herein.

2.        The Debtor, is authorized, but not directed, to continue using the existing Cash

Management System, as more particularly described in the Motion and herein, and the

requirements of Bankruptcy Code section 345(b) are hereby waived with respect to such deposit

practices.

3.        The Debtor is authorized and empowered, but not directed, to: (i) maintain and

continue to use any and all of the Accounts in existence as of the Petition Date, including,

2

without limitation, the Accounts identified on **Exhibit D** to the Motion, with the same account

numbers, styles, and document forms as those employed prior to the Petition Date; (ii) subject to

Bankruptcy Code section 553, pay, or authorize the applicable Bank to debit the applicable

Account for, any Bank Charges owed to the Banks (including the Prepetition Bank Charges), in

each case regardless of whether such items were deposited prepetition or postpetition, and

otherwise perform its obligations under the documents governing the Accounts; (iii) deposit

funds into and withdraw funds from the Accounts by all usual means, including, without

limitation, checks, wire transfers, automated transfers, and other debits; (iv) open new accounts

and close any existing Accounts as it may deem necessary and appropriate; *provided, however*,

that the Debtor shall provide written notice to the U.S. Trustee of any newly opened accounts;

and (v) treat the Accounts for all purposes as Accounts of the Debtor as debtor in possession.

4.     For all purposes in this Order, any Account opened by the Debtor on or after the

Petition Date and any and all Banks at which such Accounts are opened shall similarly be subject

to the rights and obligations granted or imposed by this Order.

5.     Subject to further order of this Court, and except with respect to payment of any

Bank Charges as authorized in this Order, nothing in this Order authorizes the Debtor to use any

cash in the Accounts, and all parties' rights are reserved with respect thereto.

6.     The Debtor shall maintain accurate and detailed records of all transfers, so that all

transactions may be readily ascertained, traced, recorded properly, and distinguished between

prepetition and postpetition transactions.

7.     The Banks are authorized, but not directed, to (i) continue to maintain, service,

and administer the Accounts, as such Accounts were maintained prepetition, without

interruption, and in the usual and ordinary course; and (ii) receive, process, honor, and pay, to

the extent of available funds, any and all checks, wire transfers, electronic fund transfers, or

other items presented, issued, or drawn on any of the Accounts after the Petition Date by the

holders or makers thereof, as the case may be.

8.      The Banks shall not honor or pay any checks, wire transfers, electronic fund

transfers, or other items drawn on the Accounts or otherwise issued prior to the Petition Date for

which the Debtor specifically issues a stop payment order in accordance with the Deposit

Agreements (as defined below) or otherwise directs the Banks not to pay in accordance with the

documents governing such Accounts.

9.      Subject to the provisions of this Order, (i) those certain existing deposit

agreements between the Debtor and the Banks (the "Deposit Agreements") shall continue to

govern the postpetition cash management relationship between the Debtor and the Banks, and all

of the provisions of such agreements, including, without limitation, the termination and fee

provisions, shall remain in full force and effect, and (ii) either the Debtor or the Banks may,

without further Order of this Court, implement changes to the Cash Management System in the

ordinary course of business pursuant to terms of the Deposit Agreements, including, without

limitation, the opening and closing of Accounts.

10.     Subject to the provisions of this Order and the protections provided in paragraph

11 herein, the Banks are authorized, but not directed, to: (i) accept, honor, and rely upon all

representations from the Debtor, in accordance with the terms of the applicable Deposit

Agreements, as to which checks, drafts, or wire transfers should be honored or dishonored

consistent with orders entered by this Court, regardless of whether the checks, drafts, or wire

transfers are dated prior to, on, or subsequent to the Petition Date and whether or not the Banks

believe that payment is authorized by some other order of this Court in accordance with the

4

terms of the applicable Deposit Agreements and provided that the applicable Accounts contain

sufficient funds; and (ii) accept presentment of all checks, drafts, and wire transfers as an

instruction by the Debtor to honor same, unless the Debtor places a stop payment on, or

otherwise instructs the Banks to not pay or dishonor a particular check, draft, or wire transfer.

11.     Notwithstanding any other provision of this Order, the Banks shall not be liable to

any party or otherwise deemed in violation of this Order on account of: (i) following the

Debtor's representations, instructions, presentations, or directions as to any order of this Court

(without any duty of further inquiry); (ii) the honoring of any prepetition checks, drafts, wires,

ACH Transfers (as defined below), or other item in a good faith belief or representation by the

Debtor that the Court has authorized such prepetition check, draft, wire, ACH Transfer or other

item; or (iii) as the result of an innocent mistake made despite implementation of reasonable

handling procedures.

12.     The Banks shall not terminate any cash management services without thirty (30)

days' prior written notice to the Debtor, the U.S. Trustee, and any official committee appointed

in the Chapter 11 Case.

13.     The Banks are authorized, but not directed, subject to Bankruptcy Code 553, to

deduct from the appropriate Accounts the Bank Charges owed to them as set forth in any Deposit

Agreements, and further, to charge back to the appropriate Accounts of the Debtor any Bank

Charges resulting from returned checks or other returned items, including, without limitation,

returned items that result from automated clearing house transactions ("ACH Transfers"), wire

transfers, or other electronic transfers of any kind (collectively, the "Returned Items") regardless

of whether such items were deposited or transferred prepetition or postpetition and regardless of

whether the Returned Items relate to prepetition or postpetition items or transfers.

5

14.     The Debtor is authorized to continue using its existing Business Forms (including, without limitation, letterhead, checks, purchase orders, invoices and envelopes) without alteration or change and without the designation "debtor in possession" or a debtor in possession case name and number imprinted upon them. Once the Debtor exhausts its existing stock of Business Forms, it shall ensure that any new Business Forms clearly denote the Debtor's status as a debtor in possession.

15.     The Debtor shall serve a copy of this Order on the Banks within five business days after entry of this Order.

16.     To the extent the provisions and requirements set forth in the U.S. Trustee Guidelines are inconsistent with the authority granted to the Debtor in this Order, this Order Controls.

17.     No liens on any Accounts granted to any of the Debtor's creditors shall take priority over the prepetition and postpetition Bank Charges to which the Banks are entitled under the terms and in accordance with the Deposit Agreements.

18.     In the event any checks or fund transfer requests relating to obligations that the Debtor is authorized to pay were or are dishonored as a consequence of the filing of this Chapter 11 Case, the Debtor is authorized to issue replacement checks or effect postpetition fund transfer requests to pay such obligations, provided the Debtor's Bank Accounts contain sufficient funds.

19.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtor pursuant thereto) shall be construed as (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined

6

in the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Bankruptcy Code section 365; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

20.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

21.     The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

22.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**SO ORDERED.**

Copies to: Default List

## **Exhibit C**

Cash Management System

## **Exhibit D**

Accounts

| Account Name | Account Number | Account Type |
|---|---|---|
| Collection Account | xx9114 | Regular Business |
| Loan Account | xx1131 | Loan Account |
| Operating Account | xx7664 | Regular Business |
| Checking Account | xx5554 | Zero Balance |
| Secondary Checking Account | xx6102 | Zero Balance |
| INTL FCStone Markets account | xx2836 | Brokerage Account |
| Interactive Brokers Account - 1 | xx1699 | Brokerage Account |
| Interactive Brokers Account - 2 | xx4614 | Brokerage Account |
| ICE US Account - 1 | 1411xx | Brokerage Account |
| ICE US Account - 2 | 6138xx | Brokerage Account |
| BlackRock Account | xx4412 | Brokerage Account |
| BAML Trade ISDA Account | N/A | Brokerage Account |
| Nextera Energy ISDA Account | N/A | Brokerage Account |
| PNC ISDA Account | N/A | Brokerage Account |