IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| VOLUNTEER ENERGY SERVICES, INC., | ) Case No. 22-50804 |
|  | ) Judge C. Kathryn Preston |
| Debtor. | ) |

**LIMITED OBJECTION OF VECTREN ENERGY DELIVERY OF OHIO, INC. d/b/a CENTERPOINT ENERGY OHIO TO THE DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING A PRIVATE SALE OF CERTAIN OF THE DEBTOR'S CUSTOMER CONTRACTS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTES, AND ENCUMBRANCES; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTOR'S CUSTOMER CONTRACTS; (III) WAIVING THE 14-DAY STAYS IMPOSED UNDER BANKRUPTCY RULES 6004(h) AND 6006(d); and (IV) GRANTING RELATED RELIEF**
[Relates To Docket No. 95]

Vectren Energy Delivery of Ohio, Inc. d/b/a CenterPoint Energy Ohio ("CEOH") by counsel, hereby objects (the "Objection") to the *Debtor's Expedited Motion For Entry of An Order (I) Authorizing and Approving a Private Sale of Certain of the Debtor's Customer Contracts Free and Clear of All Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain of the Debtor's Customer Contracts; (III) Waiving the 14-Day Stays Imposed Under Bankruptcy Rules 6004(h) and 6006(d); and (IV) Granting Related Relief* (the "Sale Motion") (Docket No. 95), and sets forth the following:

**Introduction**

CEOH is public utility that is regulated by the Public Utilities Commission of Ohio ("PUCO"). The PUCO is the government body that regulates utility services, including electric and natural gas companies in Ohio. The mission of the PUCO is to assure all residential and

business customers access to adequate, safe, and reliable utility services at fair prices, while facilitating an environment that provides competitive choices.

There are laws and regulations in effect that address the transition of customers from a supplier that has defaulted on providing gas supply to their customers that CEOH must follow, in addition to the terms and provisions of CEOH's PUCO approved Tariff for Gas Service and its gas supplier agreements with the Debtor and other retail gas suppliers. Moreover, the PUCO recently entered an order (See Exhibit 2 to this Objection) that directs CEOH and the Debtor to work together to effectuate the orderly transition of the Debtor's customers to default service, an alternate supply option requested by the customer or to the Purchaser (as defined later herein). Hence, CEOH does not take a position on the proposed sale of certain of the Debtor's gas contracts with its customers to NRG Retail LLC and affiliates ("Purchaser"). The purpose of filing this limited objection is to make sure that if the sale is approved that the order approving the sale does not impose any obligations upon CEOH that are contrary to applicable Ohio laws, regulations or CEOH's tariffs and gas supplier agreements.

## Procedural Facts

1.  On March 25, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

## Facts Concerning the Debtor

2.  The Debtor formerly supplied natural gas and electricity commodity ("Energy") to retail customers (the "Customers") in deregulated markets in Ohio, among other states. Sale Motion at ¶ 8.

3.  The Debtor's business relied on the purchase of Energy from wholesale energy suppliers ("Wholesale Energy Suppliers") to meet its retail customers' varying consumption requirements or "load." The Debtor's contracts with Wholesale Energy Suppliers were short-term commitment

contracts that the Debtor paid in arrears. On the Petition Date, the Debtor defaulted on approximately $12.6 million in payments due to its Wholesale Energy Suppliers. Sale Motion at ¶ 19.

4. The Debtor does not have the ability to deliver Energy to its customers on its own. Rather, it must rely upon local distribution companies ("LDCs") to deliver and distribute the Energy to the Debtor's customers pursuant to the terms of the LDCs' state-approved supplier tariffs and related contracts between the Debtor and the LDCs.

5. On March 28, 2022, Debtor's counsel sent the letter attached to this Objection as **Exhibit 1**, which informed CEOH that the Debtor would be seeking the immediate transition of its customers to default utility service and that the Debtor "no longer needs or wants the supply and distribution services that you ('Distribution Company') have historically provided, and as such, those services should immediately cease."

6. On March 28, 2022, the Debtor filed the *Debtor's Motion for Entry of an Order Authorizing the Debtor To (I) Cause the Transition of Customers to Default Service or Another Retail Energy Provider and (II) Waive Termination Fees Associated with Customers that Switch to Other Retail Providers* (the "Transition Motion")(Docket No. 44). Through the Transition Motion, the Debtor seeks *inter alia*, the Court's authority to "cause the transition of customers to default service (however defined under applicable state law or by the applicable electric utility or natural gas LDC) or to another retail energy provider, as authorized, by the Bankruptcy Court (the 'Customer Transition') on or before April 15, 2022." Transition Motion at p. 1.

7. On March 31, 2022, the Debtor filed the *Debtor's Second Omnibus Motion For Entry of An Order Authorizing and Approving the Rejection of Certain Executory Contracts Effective As of the Petition Date* (the "Second Motion To Reject Contracts") (Docket No. 69), seeking *inter alia*, the Court's authority to reject all outstanding energy supply contracts (the "Supply Contracts") with the

energy supplier counterparties (the "Supplier Counterparties") set forth on Schedule 1 to the proposed Order (attached at Exhibit "A" to the Second Motion To Reject Contracts), retroactive and effective as of the Petition Date.

8. The Supply Contracts are agreements whereby the Debtor purchases natural gas and electricity from the Supplier Counterparties. Second Motion To Reject Contracts at ¶ 8. The Debtor has determined that the Supply contracts no longer serve any business purpose and are burdensome to the Debtor's bankruptcy estate. Second Motion To Reject Contracts at ¶ 8.

### Facts Regarding the CEOH Agreement With the Debtor

9. The Debtor and CEOH are parties to the Vectren Energy Delivery of Ohio, Inc. Choice Supplier Pooling Agreement dated October 9, 2009 (the "Agreement") and other similar and related agreements. Under the Agreement, Ohio law, and its Tariff, CEOH has an obligation to ensure the consistent and reliable provision of natural gas service to Debtor's customers by stepping in as the supplier of last resort ("POLR") to supply natural gas to Debtor's customers if the Debtor defaults on its responsibilities under the Agreement or is otherwise unable or unwilling to provide gas supply to its customers.

10. On March 31, 2022, CEOH filed a notification of default by the Debtor and a request for authorization to terminate the Debtor's participation in CEOH's supplier programs and services. In the notification, CEOH indicated its intention to provide gas supply to Debtor's customers as the POLR and to subsequently transition Debtor's customers to a standard choice offer ("SCO") or default gas supplier.

11. On April 6, 2022, the PUCO entered the *Finding And Order* (the "PUCO Order") attached to this Objection as **Exhibit 2.** In the PUCO Order, the PUCO found that:

    A.    In paragraph 19 of the PUCO Order that CEOH, pursuant to Ohio Admin.

Code 4901:1-13-14(J), is authorized to terminate the Debtor's participation in their supplier program.

      B.    The Debtor and CEOH should work together to effectuate an orderly transition of the Debtor's customers to default service or to an alternate supply option requested by the customer.

      C.    For accounts that are proposed to be transferred to Direct Energy upon approval of this Court, the Debtor and the Purchaser should adhere to the requirements set forth in Ohio Admin. Code 4901:1-29-10(D) regarding the assignment of customer contracts.

      D.    In paragraph 20 that CEOH should delay the termination of the Debtor's participation in their supplier program until all existing customers have been transitioned.

### Facts Concerning the Sale Motion

12.    On April 4, 2022, the Debtor filed the Sale Motion, seeking *inter alia*, the entry of an order (the "Sale Order") authorizing and approving (i) the private sale (the "Sale") of certain of the Debtor's customer contracts (the "Customer Contracts") to NRG Retail LLC or its designee(s) (collectively, the "Purchaser") free and clear of all liens, claims, encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever as contemplated by the Asset Purchase Agreement (the "APA") between the Debtor and the Purchaser, (ii) the assumption and assignment of the Customer Contracts, and (iii) waiving the 14-day stay with respect to the Sale Order imposed under Bankruptcy Rules 6004(h) and 6006(d).

13.    On April 4, 2022, the Debtor filed the APA (Docket No. 103). The Debtor claims that if the APA is not approved, the Debtor's Customers will either be permanently transferred to a default utility or transferred to alternative energy suppliers ("Alternative Suppliers") and the Debtor will receive no value for these Customers. Sale Motion at ¶ 30.

14. On April 4, 2022, the Debtor filed the *Debtor's Motion For Entry of an Order (A) Scheduling An Expedited Hearing* (the "Motion To Expedite Hearing")(Docket No. 96) on the Sale Motion. Through the Motion To Expedite Hearing, the Debtor seeks (i) an expedited hearing (the "Sale Hearing") on the Sale Motion to take place on April 5, 2022 at 1:30 p.m., (ii) establishing a deadline to respond or object to the Sale Motion, (iii) providing that any party in interest seeking to oppose the Sale Motion must do so in accordance with the procedures set forth in the Motion To Expedite Hearing, and approving the form of notice attached as Exhibit "B" to the Motion To Expedite Hearing.

15. On April 4, 2022, the Court entered an Order (Docket No. 100) granting the Motion To Expedite Hearing that set a hearing on the Sale Motion to take place on April 7, 2022 at 1:30 p.m. (the "Sale Hearing") and filing objections to the Sale Motion prior to the Sale Hearing or by raising objections orally at the Sale Hearing.

16. The Debtor's proposed terms of the Sale are as follows:

   a. <u>Parties</u>: The Debtor and the Purchaser;

   b. <u>Purchase Price</u>: The purchase price for Assigned Contracts and assumption of Assumed Liabilities, not less than $250,000 plus (i) any performance obligations of the Debtor first arising on or after the applicable Assignment Date under the Assumed Contracts; (ii) all Cure Cost obligations as set forth in Section 5.08 of the APA, and (iii) all Liabilities for Taxes attributable to the ownership or use of any of the Assigned Contracts on or after the applicable Assignment Date;

   c. <u>Good Faith Deposit</u>: a deposit in the amount of $400,000;

   d. <u>Purchased Assets</u>: All Contracts with Customers of the Business that correspond to the Customer accounts identified in Schedule 2.07(b) to the

      APA, as may be revised from time to time pursuant to Section 2.07(b) of the APA;

e. <u>Excluded Assets</u>:  All assets except for the Purchased Assets [Schedule 2.02 of the APA provides that Aggregation Accounts are Excluded Assets.  All but 2,300 of the 27,000 accounts that the Debtor had in CEOH's service territory were Aggregation Accounts.]

f. <u>Private Sale/No Competitive Billing</u>:  The Sale is a private sale with no auction contemplated;

g. <u>Sale Free and Clear</u>:  The Purchased Assets are being sold free and clear of any mortgage, lien, encumbrance, pledge, charge, security interest, warrant, claim, equitable interest, option, restriction, conditional sale or other title retention device or arrangement, except for Permitted Liens.

Sale Motion at ¶ 32.

## The Proposed Sale Order

17. Attached at Exhibit "A" to the Sale Motion is the proposed Sale Order (the "Sale Order").

18. CEOH has concerns that the following provisions of the Sale Order could impose upon it obligations that it is either unable to comply with and/or contrary to applicable state laws, regulations and/or tariffs and supplier agreements regarding the transfer of customers of a defaulting supplier:

A. Paragraph W, which provides, in pertinent part: "[t]emporary transfer of a Customer to a default service shall in no way impact the validity and binding nature of such Customers Customer Contract or the Debtor's ability to assume and assign such Customer Contract to the Purchaser." Paragraph 7 contains similar language.

       i.  Whether or not the transfer of a customer to default service impacts the validity of a Customer Contract is for the PUCO to decide. CEOH should not be placed in a position that it has to move customers that were previously transferred to another supplier to the Purchaser if that transfer violates applicable Ohio law and/or the applicable customer's rights. For example, CEOH's Tariff allows customers of a removed gas supplier to "elect to enroll with a non-defaulting Choice Supplier at any time during the process" of transitioning the defaulting suppliers customers to new suppliers. Tariff Sheet No. 52, page 8 of 13 and Sheet No. 56, page 5 of 9 (available at http://midwest.centerpointenergy.com/assets/downloads/rates/oh-gas-tariff.pdf).

      B.  Paragraph 5, which provides in pertinent part: "[t]he Debtor shall not transfer any Customers in Ohio to the Purchaser earlier than April 15, 2022 and no later than June 30, 2022."

       i.  As the provider of last resort, CEOH has been forced to recall the gas pipeline capacity previously assigned to the Debtor, utilize storage gas reserves, and execute gas supply contracts within only a couple of days' notice to obtain and transport gas supply for the Debtor's customers in CEOH's service territory (the "CEOH Customers"). If the sale is approved, and the Purchaser intends to begin supplying gas to the CEOH Customer, CEOH would have to reallocate pipeline capacity to the Purchaser. Without a concrete idea of how long CEOH would be required to provide gas supply, CEOH will likely have to purchase gas on the daily market rather than obtaining longer-term contracts at more advantageous pricing. In addition, a forced transition date could leave CEOH with contract for gas supply that it no longer requires. This is not an economical method of providing gas supply to customers. CEOH currently has a plan to transition the CEOH Customers to their assigned SCO or default supplier who can obtain gas supply more economically as soon as possible. Requiring CEOH to continue to purchase and supply gas to the CEOH Customers as the POLR is not in the customer's best interests. As a result, CEOH requests that any Court ordered

8

transition of the CEOH Customers occur at the beginning of subsequent billing cycles according to CEOH's standard procedure for switching customers between retail gas suppliers.

      ii.  CEOH was provided three-days' notice that the Debtor would no longer obtain any natural gas supply for CEOH to deliver to the CEOH Customers, and in the midst of those three days, Debtor failed to fully meet its natural gas daily delivery requirements for the CEOH Customers. As a result, CEOH had to rapidly institute an unprecedented process to obtain its own source of natural gas supply, step in as the POLR and move the CEOH Customers to their assigned standard choice offer ("SCO") supplier in the midst of meter reading and billing cycle. This required CEOH to expend considerable effort creating custom software scripts within its billing and accounting systems to reconcile the combination of the Debtor, POLR, and SCO rates that the customers will experience in the transition month. To the extent that Paragraph 5 of the Sale Order impairs that process by forcing CEOH to further transition the CEOH Customers to Purchaser in the midst of the same billing cycle, that would impose an undue burden on CEOH, which would potentially be nearly impossible to comply with. Therefore, any request for CEOH to wait until April 15, 2022 to transfer CEOH Customers or to do so on or before June 30, 2022, should be stricken or revised to ensure that it does not impair CEOH's obligations to transfer the CEOH Customers as required by applicable law and the constraints of its billing and accounting systems.

    C.  Paragraph 6 provides, in pertinent part, that "[t]he transfer of the Customer Contracts to the Purchaser upon the Closing pursuant to the APA shall constitute a legal, valid, and effective transfer of the Customer Contracts, notwithstanding anything to the contrary under applicable tariffs or otherwise."

      i.  The transfer of Customer Contracts should be made subject to applicable state law regulations and tariffs and not in contravention of applicable law.

D. Paragraph 10 provides, in pertinent part, that "except for the Assumed Liabilities, at Closing, all Interests of any kind or nature whatsoever in or to the Customer Contracts prior to the closing have been unconditionally released." Paragraph O also contains a provision stating the Purchaser shall not assume or in any way be responsible for any liability, obligation, duty, or responsibility of the Debtor or its estate.

    i. The Debtor has already incurred charges, fees, and penalties for its failure to delivery sufficient quantities of gas for CEOH to deliver to the CEOH Customers. In addition, as discussed in paragraph 18.B.i. above, CEOH has incurred significant expense because it had to provide gas supply to the CEOH Customers as the POLR. And those costs will not cease to accrue on the proposed sale date: CEOH will continue to incur trailing costs related to the customer transition. Moreover, the APA attempts to limit or completely abrogate any right that CEOH might have for recovery of those costs from either the Debtor or the Purchaser. In the event those costs cannot be recovered by the Debtor, who caused the costs to occur, or the Purchaser, who is obtaining VESI's customer accounts, CEOH would have to pass those costs on to its customers through its Exit Transition Cost (ETC) Rider, which would require all of CEOH's customers (that are subject to the ETC Rider) to pay those costs.

E. Paragraph 12 provides, in pertinent part, that "[a]ny person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Customer Contracts, including, without limitation, the LDCs, is hereby directed to surrender possession of such Customer Contracts either to (a) the Debtor before the Closing or (b) the Purchaser upon the Closing."

    i. It is not clear what is meant by this provision because CEOH is not in possession of any of the Customer Contracts.

    ii. The Debtor should have possession of all Customer Contracts that it

intends to sell to the Purchaser.

    F.  Paragraph 33 contains the following injunctive provision:

"All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Customer Contracts to the Purchaser in accordance with the terms of the APA and this Sale Order."

(the "Injunctive Relief"). As set forth in Section B. below, this Court should not grant the Injunctive Relief because the Debtor is not properly before this Court to seek and obtain the Injunctive Relief. Further, the injunctive relief requested could require CEOH to violate Ohio laws, regulations, PUCO orders, its Tariff, and its obligations to other retail gas suppliers under their respective gas supplier agreements.

## DISCUSSION

**A. THE SALE ORDER SHOULD NOT CONTAIN PROVISIONS THAT WOULD REQUIRE CEOH TO VIOLATE APPLICABLE OHIO LAW IN THE IN TRANSITION THE DEBTOR'S CUSTOMERS TO DEFAULT SERVICE, AN ALTERNATE SUPPLY OPTION REQUESTED BY THE CUSTOMER OR TO THE PURCHASER.**

As set forth in paragraph 18 above, CEOH has concerns about several provisions of the Sale Order. CEOH is working with the Debtor to determine if the parties can agree upon language that will address CEOH's concerns. As set forth above, CEOH takes no position regarding the proposed sale and is in the process of transitioning the Debtor's customers as required by applicable law and its Tariff and supplier agreements. If the Court approves the proposed sale, the Sale Order should not contain provisions that would require CEOH to: (1) undertake actions that would impose an undue burden on CEOH, such as forced transition dates; and (2) violate applicable Ohio law.

**B. PARAGRAPH 33 OF THE PROPOSED ORDER TO THE SALE MOTION IMPROPERLY SEEKS TO ENJOIN CEOH FROM TAKING ANY**

11

**ACTIONS THAT THE DEBTOR MAY DEEM TO ADVERSELY AFFECT THE DEBTOR TO SELL CUSTOMER CONTRACTS.**

The Injunctive Relief language in paragraph 33 of the Sale Order is improperly broad. As set forth above, CEOH is complying with applicable law, its Tariff and its supplier agreements in the transition of the CEOH Customers. If the Debtor believes injunctive relief is necessary to accomplish the foregoing, the Debtor should be required to comply with applicable law as set forth below. Specifically, Rule 7001 of the Federal Rules of Bankruptcy Procedure in part provides:

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

\* \* \*

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

\* \* \*

Hence, Rule 7001 requires that all proceedings seeking to obtain injunctive or other equitable relief shall be brought as an adversary proceeding. *In re Best Products*, 203 B.R. 51 (Bankr. E.D. Va. 1996). In *Best Products*, the bankruptcy court, in the context of a chapter 11 bankruptcy case, held:

The final issue which the court must address is the status of the injunction included in my September 24, 1996, order providing adequate assurance to utility companies. Fed.R.Bankr.P. 7001(7) plainly requires that any request for an injunction or other equitable relief must be sought in the context of an adversary proceeding. Since the debtor has not filed the requisite action, I cannot enjoin any utility from pursuing its rights under state law should the debtor default in its payments post-petition.

*In re Best Products*, 203 B.R. at 54.

In addition, Rule 7065 of the Federal Rules of Bankruptcy Procedure incorporates Rule 65 of the Federal Rules of Civil Procedure, which sets forth the requirements for obtaining preliminary and permanent injunctive relief.

The proposed Sale Order contains the following Injunctive Relief:

12

> "All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Customer Contracts to the Purchaser in accordance with the terms of the APA and this Sale Order."

Proposed Sale Order at ¶ 33. It is undisputed that the Debtor did not file an adversary proceeding seeking the Injunctive Relief nor comply with any of the requirements of Rule 7065. The Injunctive Relief may impose additional burdens upon CEOH and/or preclude CEOH from its ongoing efforts to transition the Debtor's Customers to default service, to an alternate supply option requested by the customer or the Purchaser as required by the PUCO Order. Therefore, this Court should not approve Injunctive Relief provision sought by the Debtor through the Sale Motion.

WHEREFORE, for all of the foregoing reasons, this Court should enter an order: (1) revising or removing provisions in the Sale Order that would require CEOH to: (a) perform any action that would impose undue burdens upon CEOH; (b) impair CEOH's orderly transition of Debtor's CEOH customers to Purchaser or an alternate retail supplier on a billing-cycle timeline; (c) impair the rights of retail gas customers under Ohio law or its Tariff; or (d) be contrary to existing Ohio law or the PUCO Order; (2) removing the Injunctive Relief from the Sale Order; and (3) granting such other and further relief that the Court deems just and appropriate.

Respectfully submitted,

Dated: April 7, 2022        By:    */s/ Heather E. Heberlein*
Heather E. Heberlein (0083828)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113
Telephone: (216) 443-2553
Facsimile: (216) 443-9011
E-mail: hheberlein@porterwright.com

and

Russell R. Johnson III, Esq.
Virginia State Bar No. 31468
John M. Craig
Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Phone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com,
john@russelljohnsonlawfirm.com

*Counsel for Vectren Energy Delivery of Ohio, Inc. d/b/a CenterPoint Energy Ohio*