**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOLUNTEER ENERGY SERVICES, INC., | ) | Case No. 22-50804 |
| | ) | |
| Debtor.[1] | ) | Judge C. Kathryn Preston |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING
(I) THE DEBTOR TO REDACT CERTAIN CUSTOMER INFORMATION
FROM COURT FILINGS AND FILE THE CREDITOR MATRIX AND
SCHEDULES IN ELECTRONIC FORMAT UNDER SEAL; AND (II) THE
DEBTOR'S CLAIMS AND NOTICING AGENT TO WITHHOLD
PUBLICATION OF CLAIMS FILED BY CUSTOMERS AND TO REDACT
<u>CUSTOMER INFORMATION FROM THE CLAIMS REGISTER</u>**

Volunteer Energy Services, Inc., as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), files this motion (the "<u>Motion</u>") for entry of an order (the "<u>Proposed Order</u>") pursuant to sections 105 and 107 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Ohio (the "<u>Local Rules</u>"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtor to (a) redact from the list of creditors and parties in interest (the "<u>Creditor Matrix</u>"), schedules of assets and liabilities (the "<u>Schedules</u>"), and any other paper filed or to be filed with the Court, including certificates and affidavits of service, the names, addresses, and other contact information of the Debtor's current customers (the "<u>Current Customers</u>")[2], and (b) file the unredacted Creditor

---

[1] The last four digits of the Debtor's federal tax identification are (2693), and the address of the Debtor's corporate headquarters is 790 Windmiller Drive, Pickerington, Ohio 43147.

[2] For the avoidance of doubt, the term "Current Customers" includes all persons and entities that were being supplied natural gas and/or electricity by the Debtor as of the Petition Date (as defined below).

Matrix and Schedules, and any future amendments thereto to the extent such amendments contain redacted information, in electronic format under seal; and (ii) authorizing Epiq Corporate Restructuring, LLC ("Epiq"), which is the Debtor's claims and noticing agent, to withhold publication of claims filed by the Current Customers and to redact Current Customer information from the Claims Register (as defined below). In support of this Motion, the Debtor relies upon the amended *Declaration of Thomas Buck in Support of the Debtor's Sale Motion* (Doc. 142, Ex. B-1), and respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Ohio (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference entered in this District.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are Bankruptcy Code sections 105 and 107, Bankruptcy Rule 9018, and Local Rule 9013-1.

## BACKGROUND

4. On March 25, 2022 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. The United States Trustee appointed an unsecured creditors' committee (the "Creditors' Committee") on April 1, 2022 (Doc. 83). No other official committee, trustee, or examiner has been appointed in the Chapter 11 Case.

7. The Debtor is a retail energy supplier headquartered in Pickerington, Ohio. As of the Petition Date, the Debtor provided gas or electricity to approximately 212,000 customers throughout Ohio, Michigan, Kentucky, and Pennsylvania.

8. On April 4, 2022, the Debtor filed *Debtor's Expedited Motion for Entry of an Order (I) Authorizing and Approving a Private Sale of Certain of the Debtor's Customer Contracts Free and Clear of All Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain of the Debtor's Customer Contracts; (III) Waiving the 14-Day Stays Imposed Under Bankruptcy Rules 6004(h) and 6006(d); and (IV) Granting Related Relief* (Doc. 95) (the "Sale Motion"), seeking authority to sell certain customer contracts (the "Customer Contracts") to NRG Retail, LLC (the "Buyer").

9. On April 8, 2022, the Court entered an order (Doc. 154) (the "Sale Order") authorizing the sale (the "Sale") proposed in the Sale Motion, approving the Asset Purchase Agreement (the "APA") attached as Exhibit 1 to the Sale Order, and approving the procedures pursuant to which the Debtor will assume and assign the Customer Contracts to the Buyer.

**RELIEF REQUESTED**

10. The Debtor seeks entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing the Debtor to (a) redact from the Creditor Matrix, the Schedules, and any other paper filed or to be filed with the Court, including certificates and affidavits of service, the names, addresses, and other contact information of the Current Customers, and (b) file the unredacted Creditor Matrix and Schedules, and any future amendments thereto to the extent such amendments contain redacted information, in electronic format under seal; and (ii) authorizing Epiq to withhold publication of claims filed by the

Current Customers and to redact Current Customer information from the Claims Register (as defined below).

11. For the reasons set forth herein, the Debtor submits that the relief requested is in the best interests of the Debtor, its estate, creditors, and other parties in interest and therefore should be granted.

## BASIS FOR REQUESTED RELIEF

**I. Cause Exists to Redact the Names, Addresses, and Contact Information of the Current Customers.**

12. Bankruptcy Code section 107(b), provides, in relevant part:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may . . . (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information.

11 U.S.C. § 107(b).

13. Bankruptcy Code section 107(b) does not require a party seeking protection thereunder to demonstrate "good cause." *See, e.g.*, *Phar-Mor, Inc. v. Defendants Named Under Seal (In re Phar-Mor, Inc.)*, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995); *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 28 (2d Cir. 1994). Instead, the movant need only demonstrate that the material sought to be protected satisfies one of the categories identified in Bankruptcy Code section 107(b). Moreover, courts have determined that confidential commercial information need not rise to the level of a trade secret to be protected under Bankruptcy Code Section 107(b). *See, e.g.*, *In re Orion Pictures*, 21 F.3d at 28.

14. Bankruptcy Rule 9018 establishes procedures for applying Bankruptcy Code section 107. In pertinent part, such rule provides that "[o]n motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any

4

entity in respect of a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Bankr. P. 9018.

15. It is imperative that the Debtor be permitted to redact the Current Customers' names, addresses, and other contact information from the Creditor Matrix, Schedules and other documents filed on this Court's public docket. Under the terms of the APA, the aggregate purchase price (the "Purchase Price") for the Sale is dependent upon the number of Customer Contracts ultimately assigned to the Buyer that, *inter alia*, go on-flow as served accounts of the Buyer for retail natural gas service for at least 30 days after the applicable assignment date. *See* APA, Section 2.07. In other words, after assignment of a particular Customer Contract to the Buyer, the counterparty to such contract must remain a customer of the Buyer for a period of 30 days in order for such Customer Contract to be counted in the calculation of the Purchase Price.

16. Disclosure of the identities, addresses, or other contact information of the Current Customers on the public docket would make such information accessible to competitors of the Buyer, and would allow them to target the Current Customers, potentially *en masse*, in an attempt to persuade Current Customers to enroll with a different energy supplier.[3] For each counterparty to a Customer Contract that enrolls with an alternative energy supplier prior to the date that is 30 days after assignment of the applicable Customer Contract to the Buyer, there would be a corresponding decrease in the Purchase Price. Thus, the public disclosure of the name and contact information of the Current Customers may have a significant and detrimental impact on the Purchase Price paid to the Debtor.

17. Moreover, although the Debtor and the Buyer have, on a preliminary basis, identified the Customer Contracts to be included in the Sale, the terms of the Sale permit the

---

[3] As noted in the Sale Motion, the Debtor has already been made aware that alternative energy suppliers may be attempting to enroll the Debtor's Current Customers. *See* Sale Motion, ¶ 28.

Debtor and the Buyer to amend the list of contracts to be sold, including to add contracts not previously identified as being part of the Sale. *See* Sale Order, ¶ 17. Accordingly, the Customer Contracts that will ultimately be sold to the Buyer are not yet known, and it is important that the Debtor be permitted to redact from Court filings and treat as confidential the name, address, and other contact information of all of the Debtor's Current Customers—not just the Current Customers that are counterparties to the Customer Contracts currently identified as being included in the Sale.

18. Other courts have recognized the propriety of preserving the confidentiality of similar commercial information by authorizing such information to be redacted or otherwise protected under similar circumstances and for the same purposes set forth in this Motion. *See, e.g.*, *In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 415–16 (7th Cir. 2005) (affirming bankruptcy court's refusal to order the debtor to disclose its customer list because the list constituted "confidential commercial information" under Bankruptcy Code section 107(b)(1) and Bankruptcy Rule 9018, and "[h]anding the list over for free would have diminished the value of the estate"); *In re Nortel Networks, Inc.*, No. 09-10138 (KG), 2010 Bankr. LEXIS 5218, at *10 (Bankr. D. Del. Dec. 1, 2010) ("The Court recognizes that the list of Customer Contracts (as defined in the Motion) and affidavits of service that identify the Debtors' customers constitute confidential commercial information, and therefore authorizes that any such lists and affidavits to be filed in connection with the Motion and the procedures approved therein may be filed under seal."); *In re Nunn*, 49 B.R. 963, 965 (Bankr. E.D. Va. 1985) (protecting a creditor's customer list under Bankruptcy Code section 107(b) because "to allow a competitor access to [the creditor's] customer list would obviously have an adverse effect on [the creditor]").

19. With respect to any document filed by the Debtor in which information is redacted pursuant to an order issued on this Motion, the Debtor will serve or otherwise provide an unredacted version of such document to the Court, the U.S. Trustee, counsel to the Creditors' Committee, and upon request to counsel to PNC Bank, National Association ("PNC"). Other parties in interest shall seek a designation by further order of the Court in order to receive any such redacted information. If the document containing redacted information is a certificate or affidavit of service, however, the Debtor requests that it not be required to automatically provide unredacted versions of such documents to any party or the Court. Instead, the Debtor will provide an unredacted version to the Court, the U.S. Trustee, counsel to the Creditors' Committee, counsel to PNC, and other parties in interest designated by further order of the Court, only upon request of any such party or the Court.

## II. The Debtor Should be Permitted to File Unredacted Versions of the Creditor Matrix and the Schedules Electronically under Seal.

20. Although it is imperative that the names, addresses, and other contact information of the Current Customers be withheld from public disclosure on the Court's docket, the Debtor understands that it is important that the Court have a complete and unredacted record with respect to certain documents, including the Creditor Matrix and the Schedules. The Debtor proposes that it be permitted to file the Creditor Matrix and the Schedules (and applicable amendments thereto) under seal with this Court, but, as set forth below, given the potential size of such documents, requests that it be permitted to submit the filings in electronic format.

21. With respect to the Creditor Matrix, on April 1, 2022, the Court entered the *Order (I) Authorizing the Debtor's Claims and Noticing Agent to Maintain the Creditor List in Lieu of Filing the Creditor List and Mailing Matrix; and (II) Granting Related Relief* (Doc. 75) (the "Creditor Matrix Order") in which the Court authorized the Debtor's claims and noticing agent

to maintain the Creditor Matrix, but directed the Debtor to file a PDF version of the current Creditor Matrix with the Court. The Debtor filed the Creditor Matrix on April 4, 2022 (*see* Doc. 106), but the names and addresses of approximately 211,000 Current Customers were suppressed from the filed Creditor Matrix.[4] Even with such information excluded, the Creditor Matrix filed with the Court exceeded 4,400 pages. The Debtor estimates that the Creditor Matrix in PDF format with the Current Customers included would be in excess of 10,000 pages.

22. Due to the sheer number of Current Customers that have or had contracts with the Debtor, and the over 130,000 former customers that are or may be owed refunds from the Debtor, the Debtor believes that its Schedules will likewise be in excess of 10,000 pages. As with the Creditor Matrix, the Debtor plans to file its Schedules (and related documents) on the Court's public docket with the names, addresses, and other contact information for the Current Customers redacted or suppressed,[5] and requests that it be permitted to file an unredacted copy of the Schedules and related documents, and any applicable amendments to such documents under seal.

23. Procedure 6 of the *Southern District of Ohio Administrative Procedures for Electronic Case Filings* (the "ECF Procedures") sets forth the process for filing documents under seal in this Court. Under such procedure, once an order is obtained from the Court authorizing the filing of a document under seal, such document "shall be filed with the clerk both in paper form [and] on electronic medium (e.g., CD or DVD) in PDF format and accompanied by a paper

---

[4] Although the Debtor had not previously sought to redact the names and addresses of Current Customers from the Creditor Matrix, given the possibility that publishing such information would result in substantial harm to the bankruptcy estate, the Debtor determined that it was nonetheless necessary to suppress Current Customer information on the Creditor Matrix. The notice filed with the Creditor Matrix disclosed that the matrix attached thereto excludes such information and advised parties that the Debtor would be filing this Motion to redact and to seek authority to file an unredacted version of the Creditor Matrix under seal. *See* Doc. 106.

[5] Pursuant to the *Order Extending the Deadline for the Debtor to File Schedules and Statement of Financial Affairs* (Doc. 60), the deadline for the Debtor to file Schedules and related documents was extended until the date that is 30 days after the Petition Date.

8

copy of the court order authorizing the paper filing [under seal]." ECF Procedure 6(b). If the Court grants the Debtor authority to file the Creditor Matrix and Schedules under seal, adhering to ECF Procedure 6 would require the Debtor to print, and the Clerk to store, hard copies of documents consisting of tens of thousands of pages. The Debtor submits that this would be an unnecessary waste of the estate's limited resources. Thus, the Debtor requests that the Court waive the requirement that the Debtor deliver paper copies of the Creditor Matrix and Schedules to the Clerk, and that the Debtor instead be permitted to deliver copies of such documents on electronic medium only, which could be maintained by the Clerk in accordance with its normal procedure for maintaining sealed documents, or, in the Court's discretion, be filed electronically on the docket in this Chapter 11 Case in a manner that entirely restricts public (i.e., non-Court user) access to such documents, including, without limitation, to all attorneys and parties that have appeared in this Chapter 11 Case.

24. The Debtor believes that its filing of redacted versions of the Creditor Matrix and Schedules on the Court's public docket, coupled with the filing of the unredacted versions under seal, is an appropriate mechanism to for the Court to maintain a complete record with respect to this Chapter 11 Case, and also strikes a proper balance between the importance of providing the public access to bankruptcy dockets and the documents filed thereon and protecting sensitive commercial information. Accordingly, the Debtor requests that it be permitted to file electronic unredacted copies of the Creditor Matrix and Schedules under seal in accordance with the procedure discussed above. Upon filing any such document under seal, the Debtor will serve an unredacted electronic copy upon the U.S. Trustee, counsel to the Creditors' Committee, counsel to PNC (upon request), and other parties in interest designated by further order of the Court.

### III.     Cause Exists to Authorize Epiq to Withhold Publication of Claims Filed by Current Customers.

25.     There is also the possibility that the Debtor's Current Customers will file claims containing some of the very information (*e.g.*, their names and addresses) that the Debtor seeks to protect through this Motion. As discussed above, any public disclosure of the names, addresses, or other contact information of the Debtor's Current Customers could significantly erode the Purchase Price paid to the Debtor with respect to the Sale. Thus, the Debtor requests that Epiq be authorized to withhold publication of claims filed by the Current Customers.

26.     The Debtor further requests that the names, addresses, and other contact information of the Current Customers be redacted on the Debtor's claims register (the "Claims Register") maintained by Epiq. The proofs of claim filed by the Current Customers and an unredacted version of the Claims Register will be provided to the Court, the U.S. Trustee, counsel to the Creditors' Committee, counsel to PNC, and other parties in interest designated by further order of the Court, upon the request of any such party or the Court.

27.     Courts have granted comparable relief in other chapter 11 cases. *See, e.g.*, *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG, Docket No. 386 (Bankr. S.D. Fla. Sept. 13, 2021) (authorizing retail energy debtors to file the debtors' customer list under seal with the court); *In re Griddy Energy LLC*, Case No. 21-30923 (MI), Docket No. 108 (Bankr. S.D. Tex. March 30, 2021) (authorizing retail energy debtor to redact personally identifiable information of customers from court filings); *In re Cred Inc.*, Case No. 20-12836 (JTD), Docket No. 264 (Bankr. D. Del. Dec. 21, 2020) (authorizing debtors to redact the names and addresses of customers from all court filings and authorizing the claims agent to suppress the names and addresses of customers in proofs of claims, the claims register, and affidavits of service); *In re Agera Energy LLC*, Case No. 19-23802 (RDD), Docket No. 222 (Bankr. S.D.N.Y. Nov. 12,

2019) (authorizing retail energy debtor to redact personally identifiable information of employees, customers, and sales representatives from court filings); *In re 1515-GEEnergy Holding Co. LLC*, Case No. 19-10303 (KJC) (Bankr. D. Del. March 18, 2019) (authorizing retail energy debtor to redact customer information from creditor matrix); *In re Starion Energy Inc.*, Case. No. 18-12608 (MFW), Docket No. 133 (Bankr. D. Del. Feb. 19, 2019) (directing the clerk of the court to file and maintain the unredacted customer list under seal and not make it publicly available).

## MOTION PRACTICE

28.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

29.     The Debtor will provide notice of the Motion to: (a) the United States Trustee; (b) counsel to PNC; (c) the holders of the 20 largest unsecured claims against the Debtor; (d) all official committees appointed, as of the filing of this Motion, in the Chapter 11 Case and their counsel; (e) the offices of the attorneys general for Ohio, Pennsylvania, Michigan, Kentucky, and West Virginia; (f) the United States Attorney's Office for the Southern District of Ohio; (g) the Internal Revenue Service; (h) the state taxing authorities of Ohio, Pennsylvania, Michigan, Kentucky, and West Virginia; (i) the Public Utilities Commission of Ohio, Pennsylvania Public Utilities Commission, Kentucky Public Service Commission, and Michigan Public Service Commission; (j) the U.S. Environmental Protection Agency; (k) the Federal Energy Regulatory Commission; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The

Debtor submits that, in light of the nature of the relief requested, no other or further notice is required.

## NO PRIOR REQUEST

30.   No prior motion for the relief requested herein has been made in this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: April 15, 2022
      Columbus, Ohio

Respectfully submitted,

*/s/ Philip K. Stovall*
David M. Whittaker (0019307)
Philip K. Stovall (0090916)
**ISAAC WILES & BURKHOLDER, LLC**
Two Miranova Place, Suite 700
Columbus, Ohio 43215-5098
Tel:   (614) 221-2121
Fax:   (614) 365-9516
Email: dwhittaker@isaacwiles.com
       pstovall@isaacwiles.com

*- and -*

Darren Azman (admitted *pro hac vice*)
Natalie Rowles (admitted *pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, New York 10017-3852
Tel:   (212) 547-5400
Fax:   (212) 547-5444
Email: dazman@mwe.com
       nrowles@mwe.com

*Proposed Counsel to the Debtor*

## Exhibit A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VOLUNTEER ENERGY SERVICES, INC., | ) | Case No. 22-50804 |
| | ) | |
| Debtor.[1] | ) | Judge C. Kathryn Preston |
| | ) | |

**ORDER AUTHORIZING (I) THE DEBTOR TO REDACT CERTAIN
CUSTOMER INFORMATION FROM COURT FILINGS AND FILE THE
CREDITOR MATRIX AND SCHEDULES IN ELECTRONIC FORMAT UNDER
SEAL; AND (II) THE DEBTOR'S CLAIMS AND NOTICING AGENT TO
WITHHOLD PUBLICATION OF CLAIMS FILED BY CUSTOMERS AND TO
<u>REDACT CUSTOMER INFORMATION FROM THE CLAIMS REGISTER</u>
[RELATED TO DOC. __]**

Upon the motion (Doc. __) (the "<u>Motion</u>")[2] of the Debtor for entry of an order (this

"<u>Order</u>"): (i) authorizing the Debtor to (a) redact from the Creditor Matrix, the Schedules, and

any other paper filed or to be filed with the Court, the names, addresses, and other contact

---

[1] The last four digits of the Debtor's federal tax identification are (2693), and the address of the Debtor's corporate headquarters is 790 Windmiller Drive, Pickerington, Ohio 43147.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

information of the Current Customers, and (b) file the unredacted Creditor Matrix and Schedules, and any future applicable amendments thereto, in electronic format under seal; and (ii) authorizing Epiq to withhold publication of claims filed by the Current Customers and to redact Current Customer information from the Claims Register, all as more fully set forth in the Motion; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference entered in this District; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is granted as set forth herein.

2. The Debtor is authorized to redact or cause to be redacted from the Creditor Matrix, the Schedules, and any other paper filed or to be filed with the Court, including certificates or affidavits of service, the names, addresses, and other contact information of the Current Customers.

3. With respect to any document filed by the Debtor in which information is redacted pursuant to this Order, the Debtor shall serve or otherwise provide an unredacted version of such document to the Court, the U.S. Trustee, counsel to the Creditors' Committee,

and upon request to counsel to PNC. Other parties in interest shall seek a designation by further order of the Court in order to receive any such redacted information. In the event such redacted document is a certificate or affidavit of service, the Debtor is required to provide an unredacted version of such certificate or affidavit of service to the Court, U.S. Trustee, counsel to the Creditors' Committee, counsel to PNC, and other parties in interest designated by further order of the Court, only upon request of any such party or the Court.

4. Notwithstanding anything to the contrary in the order authorizing the engagement of Epiq as the Debtor's claims and noticing agent (Doc. 72) or in any Bankruptcy Rule or Local Rule, Epiq is authorized to withhold publication of claims filed by the Current Customers and to redact the names, addresses, and other contact information of the Current Customers from the Claims Register; *provided that*, the Debtor or Epiq shall provide a copy of the proofs of claim filed by the Current Customers and an unredacted version of the Claims Register to the Court, the U.S. Trustee, counsel to the Creditors' Committee, counsel to PNC, and other parties in interest designated by further order of the Court, upon the request of any such party or the Court.

5. The Debtor is authorized to file an unredacted version of the Creditor Matrix and Schedules, and any future amendments thereto to the extent such amendments contain redacted information, in electronic format under seal. Notwithstanding ECF Procedure 6, the Debtor is not required to file a paper copy of such documents with the Clerk, and instead shall submit such documents to the Clerk for filing on electronic medium (e.g., CD or DVD) in PDF format. The Clerk is authorized to file the unredacted Creditor Matrix, Schedules, and any applicable amendments thereto on the Court's electronic docket in a manner that entirely restricts public (i.e., non-Court user) access to such documents, including, without limitation, to all attorneys and parties that have appeared in this Chapter 11 Case.

6. Upon filing the unredacted Creditor Matrix, Schedules, or any applicable future amendments thereto under seal, the Debtor shall serve unredacted electronic copies upon the U.S. Trustee, counsel to the Creditors' Committee, and upon request to counsel to PNC. Other parties in interest shall seek a designation by further order of the Court in order to receive any such unredacted electronic copies.

7. Within two business days of entry of this Order, the Debtor shall serve a copy of this Order on the Master Service List, as such term is defined in the Case Management Procedures approved by this Court's *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* (Doc. 104); *provided that*, given the limitation of notice to the Debtor's customers approved in the *Order (I) Authorizing the Debtor to Implement Procedures for Notifying Customers of the Commencement of the Debtor's Case and (II) Granting Related Relief* (Doc. 149), the Debtor's Current Customers shall not be deemed an "Affected Entity" included within the Master Service List for purposes of service of this Order, and service of this Order upon the Current Customers is therefore not required. The Debtor shall file a certificate of service to evidence compliance with this provision.

8. The Debtor is authorized to take all actions necessary to implement the relief granted in this Order.

9. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**SO ORDERED.**

Copies to: Default List

4