**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| VOLUNTEER ENERGY SERVICES, INC., | ) Case No. 22-50804 <br> ) <br> ) Judge C. Kathryn Preston |
| Debtor. | ) <br> ) <br> ) |

**LIMITED OBJECTION OF VECTREN ENERGY DELIVERY
OF OHIO, INC. d/b/a CENTERPOINT ENERGY OHIO TO THE
DEBTOR'S SECOND OMNIBUS MOTION FOR ENTRY OF
AN ORDER AUTHORIZING AND APPROVING THE REJECTION OF CERTAIN
EXECUTORY CONTRACTS EFFECTIVE AS OF THE PETITION DATE**
[Relates To Docket No. 69]

Vectren Energy Delivery of Ohio, Inc. d/b/a CenterPoint Energy Ohio ("CEOH"), by counsel, hereby files this limited objection (the "Objection") to the *Debtor's Second Omnibus Motion For Entry of An Order Authorizing and Approving the Rejection of Certain Executory Contracts Effective As of the Petition Date* (the "Motion") (Docket No. 69) and sets forth the following:

**Introduction**

For the time-period from March 25, 2022 (the "Petition Date"), to and including March 31, 2022, the gas Supplier Counterparties (as defined in paragraph 3 below) continued to perform under their Supply Contracts (as defined in paragraph 3 below) in the CEOH service territory. During the foregoing time-period, CEOH continued to transport gas to the Debtor's customers in CEOH's service territory and had to undertake actions to account for deficiencies in the Debtor's performance of its obligations. CEOH did not take over supplying the Debtor's customers in CEOH's service territory as the provider of last resort ("POLR") until April 1, 2022. Accordingly,

if the Court were to allow the Supply Contracts for the Supplier Counterparties in CEOH's service territory to be retroactively rejected to the Petition Date, it would be a legal fiction contrary to what occurred. Moreover, it is not clear at this time if CEOH would be legally responsible for any penalties or fines for the delivery of gas from March 25, 2022, to March 31, 2022, if the Supply Contracts were retroactively deemed rejected as of the Petition Date and the title to the gas transported was called into question. Therefore, this Court should not allow the Supply Contracts for the Supplier Counterparties in the CEOH service territory to be rejected retroactively to the Petition Date, but instead should deem them rejected as of April 1, 2022, when CEOH took over the supply of gas to the Debtor's customers in CEOH's service territory as the POLR.

## Procedural Facts

1. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.

2. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

## Facts Concerning the Motion

3. On March 31, 2022, the Debtor filed the Motion, seeking *inter alia*, the Court's authority to reject all outstanding energy supply contracts (the "Supply Contracts") with the energy supplier counterparties (the "Supplier Counterparties") set forth on Schedule 1 to the proposed Order (attached at Exhibit "A" to the Motion), retroactive to the Petition Date. Motion at p.1. As the facts are that the Supplier Counterparties in CEOH's service territory continued to operate through the end of March 2022 and CEOH had to undertake certain actions based on the Debtor's defaults after the Petition Date and before CEOH took over as the POLR, it is not clear from the Motion why the Debtor is seeking to create a legal fiction with the rejection date of the Supply

2

Contracts retroactive to the Petition Date. Additionally, it is unknown at this time what potential issues or liabilities that CEOH may be liable for if the Court approves the rejection of the Supply Contracts retroactive to the Petition Date.

4. As reflected by the *Limited Objection of Eco-Energy Natural Gas, LLC* (Docket No. 168) to the Motion, the Debtor continued to nominate the supply of natural gas from some of their Supplier Counterparties subsequent to the Petition Date.

5. The *Notice of Motion and Hearing* (Docket No. 92) provides that objections to the Motion must be filed on or before April 17, 2022, with a hearing on the Motion to take place on April 21, 2022, at 1:30 p.m.

### Facts Concerning the Debtor

6. The Debtor supplied gas and electric commodity (collectively, "Energy") to retail customers in deregulated markets in Ohio, among other states. Motion at ¶ 8.

7. The Debtor generally procured Energy from the Supplier Counterparties to meet its retail customers' varying consumption requirements or "load." Motion at ¶ 8.

8. The Supply Contracts are agreements whereby the Debtor purchased natural gas and electricity from the Supplier Counterparties. Motion at ¶ 8.

9. The Debtor has determined that the Supply Contracts no longer serve any business purpose and are burdensome to the Debtor's bankruptcy estate. Motion at ¶ 8. Although the foregoing statement may be true for the time-period from April 1, 2022, forward, it is not clear that the foregoing statement is correct for the time-period prior to April 1, 2022.

### Facts Regarding CEOH

10. CEOH is public utility and local gas distribution company that is regulated by the Public Utilities Commission of Ohio ("PUCO"). The PUCO is the government body that regulates

utility services, including electric and natural gas companies in Ohio. The mission of the PUCO is to assure all residential and business customers access to adequate, safe, and reliable utility services at fair prices, while facilitating an environment that provides competitive choices.

11. There are laws and regulations in effect that address the transition of customers from a supplier that has defaulted on providing gas supply to their customers that CEOH must follow, in addition to the terms and provisions of CEOH's PUCO approved Tariff for Gas Service and its gas supplier agreements with the Debtor and other retail gas suppliers.

12. The Debtor and CEOH are parties to the Vectren Energy Delivery of Ohio, Inc. Choice Supplier Pooling Agreement dated October 9, 2009 (the "Agreement") and other similar and related agreements, under which Debtor agreed to deliver and CEOH agreed to receive and distribute natural gas to Debtor's customers. Under the Agreement, Ohio law, and its Tariff, CEOH has an obligation to ensure the consistent and reliable provision of natural gas service to Debtor's customers by stepping in as the POLR to supply natural gas to Debtor's customers if the Debtor defaults on its responsibilities under the Agreement or is otherwise unable or unwilling to provide gas supply to its customers.

13. On March 28, 2022, Debtor's counsel sent the letter attached to this Objection as **Exhibit 1**, which informed CEOH that the Debtor would be seeking the immediate transition of its customers to default utility service and that the Debtor "no longer needs or wants the supply and distribution services that you ('<u>Distribution Company</u>') have historically provided, and as such, those services should immediately cease." The letter also stated that Debtor had asked this Court to schedule an expedited hearing on its motion to transfer its customers to default utility service for April 1, 2022.

14. Between March 28, 2022, and April 1, 2022, Debtor continued to nominate gas

capacity and provide gas supply to CEOH for delivery to its customers. However, during that period, Debtor failed to meet its directed delivery quantities, and CEOH had to supplement Debtor's gas supply from its storage reserves. On March 30, 2022, with this Court's authorization, Debtor voluntarily released to CEOH the gas pipeline capacity that CEOH had assigned to Debtor for the month of April 2022.

15. On March 31, 2022, CEOH filed a notification of default by the Debtor and a request for authorization to terminate the Debtor's participation in CEOH's supplier programs and services. In the notification, CEOH indicated its intention to provide gas supply to Debtor's customers as the POLR and to subsequently transition Debtor's customers to a standard choice offer ("SCO") or default gas supplier. As of April 1, 2022, CEOH took over as the POLR for certain of the Debtor's customers in CEOH's service territory. Because CEOH is not a retail gas supplier in Ohio, in order to provide gas supply to Debtor's customers as the POLR, CEOH had to urgently negotiate and execute gas supply contracts and purchase gas on the daily, or spot, gas market.

## DISCUSSION

**A. The Debtor Should Not Be Permitted To Reject The Supply Contracts Nunc Pro Tunc To the Petition Date Because The Supplier Counterparties And The Debtor Generally Continued To Perform Under the Supply Contracts From the Petition Date Through And Including March 31, 2022.**

16. CEOH does not oppose the Debtor's rejection of the Supply Contracts but does oppose the Debtor's request for Court approval to reject the Supply Contracts *nunc pro tunc* to the Petition Date because it does not reflect the realities of what occurred regarding the supply and delivery of natural gas to the Debtor's customers from the Petition Date through March 31, 2022.

17. In the *per curiam* opinion in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano,* 140 S.Ct. 696, 206 L.Ed.2d 1 (2020), the United States Supreme Court ruled

5

that a *nunc pro tunc* ("now for then") order must "reflect the reality" of what has already occurred. "Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Id.,* 140 S. Ct. at 701, *quoting Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912). Put colorfully, "*[n]unc pro tunc* orders are not some Orwellian vehicle for revisionist history – creating 'facts' that never occurred in fact." *Id., quoting United States v. Gillespie,* 666 F.Supp. 1137, 1139 (N.D. Ill. 1987). Put plainly, the court "cannot make the record what it is not." *Id., quoting Missouri v. Jenkins,* 495 U.S. 33, 49 (1990).

18. The very problems identified by the United States Supreme Court in *Acevedo* exist in this case based on the Motion filed on March 31, 2022, seeking to retroactively reject the Supply Contracts to March 25, 2022, prior to the filing of the Motion. The Debtor knew that gas continued to be provided by gas Supplier Counterparties through March 30 or 31, 2022, and the Debtor continued to nominate gas during that time-period.

19. If the Court authorizes the Debtor to reject the Supply Contracts, which CEOH does not oppose, the rejection effective date should be April 1, 2022, when the Debtor ceased providing gas commodity to CEOH for delivery to the Debtor's customers in CEOH's service territory and CEOH took over as the POLR. Allowing the Debtor to reject its gas supply contracts as of March 25, 2022, would create a legal fiction, specifically, that gas supply would have flowed from the Supplier Counterparties to CEOH for delivery to Debtor's customers, but no party would have contracted for the delivery of that gas. In addition, it would raise the question of who held valid title to the delivered gas.

B.  **The Principles Of Equity Do Not Support The Retroactive Rejection Of The Supply Contracts To The Petition Date.**

20. In paragraph 16 of the Motion, the Debtor acknowledges that Section 365 does not specifically address the retroactive rejection of executory contracts, but instead cites to case law that provides that courts have authorized the retroactive rejection of contracts where principles of equity supported such authorization.

21. Courts that have ruled that they have the authority to retroactively reject an executory contract have seldom held that the effective date of rejection was prior to the date that the motion to reject (or similar request) was filed. *See In re Upper Crust, LLC*, 502 B.R. 1, 6-7 (Bankr. D. Mass. 2013) (*in part citing Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602 (2d Cir. 2007) (rejection effective retroactive to date after motion was filed, but prior to entry of order approving rejection); *In re Philadelphia Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (rejection effective retroactive to the date motion to reject was filed); *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (rejection retroactive to date motion was filed); *In re CCI Wireless, LLC*, 279 B.R. 590, 595 (Bankr. D. Colo. 2002) (rejection effective retroactive to date motion was filed), *aff'd* 297 B.R. 133, 140 (D. Colo. 2003); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.*, 2002 U.S. Dist. LEXIS 20052, 2002 WL 31548723 (S.D.N.Y. 2002) (rejection effective on date prior to entry of order approving rejection, but post-dating filing of the motion to reject); *Constant Ltd. Partnership v. Jamesway Corp. (In re Jamesway Corp*.), 179 B.R. 33, 39 (S.D.N.Y. 1995) (rejection effective prior to date that the order approving the rejection was entered, but to a date subsequent to the filing of the motion to reject); *see also In re Avianca Holdings S.A.*, 618 B.R. 684, 708 (Bankr. S.D.N.Y. 2020) (holding that the rejection should be the date that the rejection motion was filed); *In the Matter of Federated Department Stores, Inc.*, 131 B.R. 808, 814 (S.D. Ohio 1991) (holding that the effective date of

rejection is the date of the bankruptcy court's order approving rejection). As such, if this Court decides to approve the retroactive rejection of the Supply Contracts, the effective date of the rejection should be no earlier than March 31, 2022 (the date that the Debtor filed the Motion) or preferably April 1, 2022, when most, if not all of the Supply Contracts, terminated by their own terms.

22. It is not clear what the facts were in the unpublished decisions cited by the Debtor in paragraph 16 of the Motion to support their retroactive rejection of contracts, so they are not helpful to this analysis.

23. The Supply Contracts that the Debtor seeks to reject were in effect from the Petition Date through March 31, 2022, and CEOH acted properly under those Supply Contracts, including CEOH taking steps to account for deficiencies in Debtor's performance of its obligations during that post-petition time-period. The Debtor affirmatively informed CEOH and its Supplier Counterparties that the Debtor would continue to provide service to its customers until at least April 1, 2022, when it had asked this Court to consider its motion to transfer customers to default service, and took actions, e.g., nominating capacity needs, in compliance with the Supply Contracts. Rejecting the Supply Contracts back to a retroactive and effective to the March 25, 2022 Petition Date would leave a gap period through March 31, 2022, during which natural gas actually flowed from Supplier Counterparties to the Debtor's customers through CEOH's distribution system but no entity would have contracted for that gas or delivery during that time period.

24. The equities in this case clearly do not support the retroactive rejection of the Supply Contracts to the Petition Date that may or may not cause legal liabilities to the local distribution companies, such as CEOH, for gas delivered during that time-period. It is unknown

at this time, and will also likely be unknown as of the April 21, 2022 hearing on the Motion, what potential issues or liabilities may arise for CEOH in the event that the Court approves the retroactive rejection of the Supply Contracts to the Petition Date.

WHEREFORE, for all of the foregoing reasons, this Court should enter an order: (1) denying retroactive rejection of the Supply Contacts to the March 25, 2022 Petition Date; and (2) granting such other and further relief that the Court deems just and appropriate.

Dated: April 15, 2022     By:  */s/ Heather E. Heberlein*
Heather E. Heberlein (0083828)
Porter Wright Morris & Arthur LLP
950 Main Avenue, Suite 500
Cleveland, Ohio 44113
Telephone: (216) 443-2553
Facsimile: (216) 443-9011
E-mail: hheberlein@porterwright.com

and

Russell R. Johnson III, Esq.
Virginia State Bar No. 31468
John M. Craig
Virginia State Bar No. 32977
Law Firm of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia 23103
Phone: (804) 749-8861
Facsimile: (804) 749-8862
Email: russell@russelljohnsonlawfirm.com,
john@russelljohnsonlawfirm.com

*Counsel for Vectren Energy Delivery of Ohio, Inc. d/b/a CenterPoint Energy Ohio*